IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBIN HOPPER and STEVEN HOPPER, <br><br> Plaintiffs, <br><br> v. <br><br> ELI LILLY AND COMPANY, *et al.*, <br><br> Defendants. | CIVIL ACTION No. 05-CV-02346 (RBW/AK) |

## DEFENDANT ELI LILLY AND COMPANY'S
## MOTION FOR SUMMARY JUDGMENT
## AS TO THE CLAIMS OF PLAINTIFFS ROBIN AND STEVEN HOPPER

Defendant Eli Lilly and Company ("Lilly") moves for Summary Judgment pursuant to

Fed. R. Civ. P. 56 on all claims asserted against it by Plaintiffs Robin and Steven Hopper

(Counts I through VI) on the ground that there is no genuine issue of material fact and that Lilly

is entitled to judgment in its favor as a matter of law.

Lilly is entitled to summary judgment as a matter of law on these counts because

Plaintiffs have not and can not come forward with any evidence that Ms. Hopper's mother's

treating and prescribing physician read or relied on any warnings or statements made by Lilly in

deciding to prescribe a Lilly product to Ms. Hopper's mother.

In further support of its motion, Lilly adopts and incorporates herein its accompanying

Memorandum of Points and Authorities (including Statement of Undisputed Facts), and the

Affidavit of Lynn M. Zuchowski.

WHEREFORE, Lilly moves for the entry of summary judgment in its favor as to Counts

I through VI of the Complaint.

B3286520.1

## REQUEST FOR HEARING

Pursuant to LCvR 7(f), Lilly requests a hearing on its Motion for Summary Judgment.


Respectfully submitted,

ELI LILLY AND COMPANY


/s/ James J. Dillon
James J. Dillon, D.C. Bar # 485593
Foley Hoag LLP
155 Seaport Boulevard
World Trade Center West
Boston, MA 02210-2600
(617) 832-1000


Dated: November 30, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBIN HOPPER and STEVEN HOPPER, <br><br> Plaintiffs, <br><br> v. <br><br> ELI LILLY AND COMPANY, *et al.*, <br><br> Defendants. | CIVIL ACTION No. 05-CV-02346 (RBW/AK) |

### DEFENDANT ELI LILLY AND COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

I.    **INTRODUCTION**

Defendant Eli Lilly and Company ("Lilly") submits this Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment. Each of the claims asserted - negligence, strict liability, breach of warranty, negligent misrepresentation - rest in the end on the alleged inadequacy of Lilly's written product literature and warnings. Each claim, then, asserts that those written materials were read and relied upon by the prescribing doctor - the learned intermediary - and that the doctor would not have prescribed the drug had better written materials been supplied.

Plaintiffs claim is that Lilly's wrong was inadequate literature and warnings, that this written inadequacy caused the doctor to prescribe the drug, and that better literature and warnings would have prevented the prescription, and therefore the injury. There can be no proof that Lilly's literature was the "but-for" cause of the prescription and harm, unless the prescribing doctor relied on Lilly's literature. But Plaintiff has no evidence that the prescribing doctor saw, read, or relied on Lilly's literature. The pharmaceutical at issue here had been on the market for

B3281132.2

more than twenty years when it was prescribed in this case. It was never patented, and literally

hundreds of companies sold the drug over that span. At least sixty companies sold it at the time

of the prescription. So far as the record goes, the doctor might have prescribed the drug based on

his own training and experience, on medical literature, on the standard of care in his community,

or based on the product literature promulgated by one of the other companies that made the drug.

On the record, it is not plausible to assume that the doctor based the prescription decision

on Lilly's product literature since at the time of the prescription, that Lilly literature did <u>not</u> have

an indication to use the drug for the prevention of miscarriage, the purpose the physician here

obviously pursued. It is perfectly acceptable for a physician to prescribe a drug for an FDA-

approved use, even if one or more of the companies making the drug did not indicate it for that

use. In such cases, however, the doctor's prescription decision cannot be based on the alleged

inadequacy of the literature of one of these companies, Lilly, that did not suggest that use. On

the record, Lilly's literature is simply not implicated or relevant. Since the only wrong alleged

against Lilly is a failure in that literature,[1] Plaintiff cannot show that the alleged Lilly failure was

at all a cause of her harm.

While the Complaint also asserts generally that Lilly was negligent in "failure to warn,

over-promotion of DES, and failure to heed and report adverse studies regarding the safety and

efficacy of DES," those failures, if proved, still relate to Lilly's product literature. Any testing,

warning, or report of studies would of necessity be contained in the product literature that is the

crux of this claim.

---

[1] Ms. Hopper alleges that a Lilly product was prescribed to her mother, and that as a result she sustained injuries. Lilly does not concede that a Lilly product was ever prescribed to or ingested by Plaintiff's mother but, in any event, the critical point for liability is whether the prescribing doctor relied on Lilly's warnings and literature in deciding whether to prescribe the generic drug diethylstilbestrol to Plaintiff's mother.

## II.    STATEMENT OF UNDISPUTED FACTS[2]

1.      In the Complaint, Robin Hopper ("Ms. Hopper") alleges that Lilly's failure to warn proximately and in fact caused the injuries for which she is now claiming damages. Complaint (attached as Exhibit 1 to the Affidavit of Lynn M. Zuchowski made in support of Defendant Eli Lilly and Company's Motion for Summary Judgment ("Zuchowski Aff.")) ¶¶5 (Count I - Negligence), 11 (Count II - Strict Liability), 15-18 (Count III - Breach of Warranty), 20-23 (Count IV - Negligent Misrepresentation), 24 (Count VI - Punitive Damages), 26 (Count VI - Loss of Consortium) (Zuchowski Aff., Ex. 1).

2.      While living in California and while pregnant with Ms. Hopper, Fayola Hannah ("Ms. Hannah") was allegedly prescribed the diethylstilbestrol ("DES") by Dr. Coleman in 1969 and 1970, due to a prior miscarriage and spotting during her pregnancy with Ms. Hopper. Complaint at ¶ 3 (Zuchowski Aff., Ex. 1); Plaintiff Robin Hopper's Responses to Defendants' Amended Uniform Preliminary Requests for Information ("Hopper UPRI") Nos. 12, 13, 15, 16 (attached as Exhibit 2 to Zuchowski Aff.);  Transcript of the Deposition of Fayola Hannah ("Hannah Dep.") at 16-17 (excerpts attached as Exhibit 3 to Zuchowski Aff.).

3.      Plaintiff's mother gave birth to Ms. Hopper at the Gardena Memorial Hospital, Gardena, California.  Plaintiff was born on May 16, 1970.  Hopper UPRI. No. 1 (Zuchowski Aff., Ex. 2).

4.      Dr. Coleman, the physician who allegedly prescribed DES to Ms. Hopper's mother while she was pregnant with Plaintiff, is deceased.  Hannah Dep. at 26 (Zuchowski Aff., Ex. 3); Physician Information from the Medical Board of California  (attached as Exhibit 4 to Zuchowski Aff.).

---

[2] Lilly accepts these facts as undisputed for purposes of this summary judgment motion only and reserves the right to contest any of these facts at trial.

5.    DES was a prescription drug, available for use only by prescription from a licensed physician.

6.    Plaintiff has provided no medical records or prescription records demonstrating that Dr. Coleman prescribed Lilly's DES, as opposed to a generic prescription or a specific prescription for another drug company's brand of DES to Plaintiff's mother during her pregnancy with Ms. Hopper. In fact, Plaintiff has provided no medical records or prescription records demonstrating that Dr. Coleman prescribed Ms. Hannah DES at all.

7.    In 1969-1970, the years that Ms. Hopper's mother allegedly took DES, at least 60 companies manufactured DES. *See American Druggist Blue Book* ("Blue Book"), 1969 and 1970 (excerpts attached as at Exhibit 5 to Zuchowski Aff.); *Drug Topics Red Book* ("Red Book"), 1969 and 1970 (excerpts attached as at Exhibit 6 to Zuchowski Aff.).

8.    DES was a generic drug, never patented, that was never proprietary to any company. *Sutowski v. Eli Lilly & Co.*, 696 N.E.2d 187, 188 (Ohio 1998) ("Because DES was not patented, some two hundred to three hundred drug companies produced DES in the years it was widely prescribed for use during pregnancy.")

9.    Federal Regulations now and in the years of Ms. Hopper's mother's pregnancy with her required *all* manufacturers of prescription medications to provide instructions and warnings for physicians on prescription medications that could only be obtained through the order of a licensed medical practitioner. Federal Food, Drug and Cosmetic Act §§ 502, 503, 21 U.S.C. §§ 352(f), 353 (1938) (excerpts attached as Exhibit 7 to Zuchowski Aff.); Food and Drugs, 21 C.F.R. § 1.106 (1969) (excerpts attached as Exhibit 8 to Zuchowski Aff.); Food and Drugs, 21 C.F.R. § 1.106 (1970) (excerpts attached as Exhibit 8 to Zuchowski Aff.).

10.    Plaintiff has provided no evidence demonstrating that Dr. Coleman ever read or consulted Lilly's product warnings and literature in determining whether or not to prescribe a medication to Ms. Hopper's mother.

11.    At the time of Ms. Hopper's mother's pregnancy with her, from approximately August 1969 to May 1970, Lilly's product literature did not indicate use of the drug during pregnancy. *See* Lilly's DES product literature from September 1969 and June 1971 (copies attached as Exhibit 9 to Zuchowski Aff.); 1969 and 1970 entries for Lilly's DES in the Physician's Desk Reference (copies attached as Exhibit 10 to Zuchowski Aff.).

## III.    ARGUMENT

### A.    SUMMARY JUDGMENT IS MANDATED FOR A DEFENDANT WHERE THERE IS NO EVIDENCE ON AN ELEMENT ESSENTIAL TO PLAINTIFF'S CLAIMS.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Once the moving party asserts "an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the latter must establish the existence of an issue that is both "genuine" and "material," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A party moving for summary judgment in a case where the opposing party will have the burden of proof at trial is entitled to summary judgment if he negates an essential element of the opponent's case or demonstrates that proof of that element is unlikely to be forthcoming at trial.  "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.

Plaintiff has the burden of proving a causal connection between an allegedly tortious act of a defendant and her claim of injury. In this case, Plaintiff alleges that warnings by Lilly for its DES were inadequate and that these inadequate warnings were the cause of her injuries. In essence, Plaintiff asserts that, but for Lilly's inadequate warnings, the prescription for DES would not have been made and the harm would not have occurred. An essential element of each of these claims, then, is that the prescribing doctor and learned intermediary, Dr. Coleman, relied upon Lilly's warnings when he prescribed this drug. If Dr. Coleman did not so rely, Lilly's warnings, adequate or inadequate, are simply beside the point of these claims.[3] Where the non-moving party bears the burden of proof, it may not defeat summary judgment by relying upon mere allegations or evidence that is "merely colorable" or "not significantly probative." *Anderson*, 477 U.S. at 249-50. Rather, the party must produce sufficient evidence to support a jury verdict. *Id.* at 248.

**B.      The Substantive Law of California Should Govern Plaintiffs' Claims.**

California substantive law applies to Plaintiff's claims. Plaintiff was born in California, she was allegedly exposed to DES *in utero* in California and her mother allegedly filled her prescription for DES in California. Plaintiff has never lived in the District of Columbia nor do any of the witnesses in this case reside there. Under District of Columbia choice of law principles, this Court must perform a "governmental interests" analysis to determine which substantive law to apply. *Herbert v. District of Columbia*, 808 A.2d 776, 779 (D.C. 2002). Under this analysis, "when the policy of one state would be advanced by application of its law,

---

[3] Lilly does not concede that its product literature concerning diethylstilbestrol was in any way inadequate. However, for purposes of this summary judgment motion only, Lilly focuses on Plaintiff's burden to show that any alleged inadequacy caused Plaintiff's injuries.

and that of another state would not be advanced by application of its law, a false conflict appears and the law of the interested state prevails." *Id.*

In determining which jurisdiction's policy would be more advanced by the application of its law, the Court must consider the four factors listed in the Restatement (Second) of Conflict of Laws § 145 (1971): (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship is centered. *Id.* (citing *District of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C. 1995)). The District of Columbia actually applies a "constructive blending" of the governmental interests test and the most significant relationship test. *Hercules & Co. v. Shama Rest.*, 566 A.2d 31, 41 n.18 (D.C. 1989).

Plaintiff's alleged exposure to DES took place in California, where her mother lived during her pregnancy, where her mother allegedly was prescribed DES and filled her prescription for DES, and where Plaintiff was born. The cause of action has no connection whatsoever to the District of Columbia. *Id.* Because all of the operative events related to the prescription and use of the drug occurred in California, California substantive law applies to Plaintiff's claims.[4] *See Jaffe v. Pallotta TeamWorks*, 374 F.3d 1223, 1227 (D.C. Cir. 2004) (holding that Virginia rather than District of Columbia substantive law governed plaintiff's underlying tort suit because her injury and the medical care leading up to it occurred there).

---

[4] The practice in DES cases of applying the law of the place of a plaintiff's alleged exposure is consistently followed by other courts as well. *See, e.g., Tidler v. Eli Lilly & Co.*, 95 F.R.D. 332, 334-35 (D.D.C. 1982); *In re DES Cases*, 789 F. Supp. 552, 567 (E.D.N.Y. 1992); *In re New York County DES Litig. (Godfrey v. Eli Lilly & Co.)*, 636 N.Y.S.2d 338, 339 (N.Y. App. Div. 1996).

## C.     BECAUSE THE SUBJECT MATTER OF THIS CASE IS A PRESCRIPTION DRUG, THE LEARNED INTERMEDIARY RULE APPLIES.

In California, it is long established that a drug manufacturer's duty to warn runs to the prescribing physician and not to the ultimate consumer of the product. *Motus v. Pfizer Inc.*, 358 F.3d 659, 661 (9th Cir. 2004); *Love v. Wolf*, 38 Cal. Rptr., 183 (Cal. Ct. App. 1964). "If adequate warning of potential dangers of a drug has been given to doctors, there is no duty by the drug manufacturer to insure that the warning reaches the doctor's patient for whom the drug is prescribed." *Stevens v. Park, Davis & Co.*, 507 P.2d 653, 661 (Cal. 1973) (*quoting Love v. Wolf*, 38 Cal. Rptr. at 193).   The prescribing physician is the logical target of a warning concerning a prescription medication, because only the physician has the scientific acumen required to comprehend the risks and benefits associated with prescription drugs. *See Garside v. Osco Drug, Inc, 976* F. 2d. 77, 80 (1st Cir. 1992) (stating that the physician is in the best position to convey warnings regarding medical products to patients).

This case, arising from events allegedly occurring in 1969 and 1970, predates any use of consumer oriented package inserts, which were not required until at least 1976.[5] Estrogen Preparations, 41 Fed. Reg. 47,573, 47,576 (Oct. 29, 1976) (Zuchowski Aff., Ex. 12).

Plaintiff in this case must be able to demonstrate that Lilly breached a duty by failing to adequately warn Dr. Coleman of the risks associated with DES and, because of that failure, Dr. Coleman prescribed DES. Without proving that Dr. Coleman ever read, viewed or relied on

---

[5] This case predates consumer package inserts. Drugs dispensed by prescription had only limited mandated labeling requirements for the product as sold to consumers - essentially that the pharmacist attach a label with the patient's name, directions for use and cautionary statements, if any, contained in the prescription and dating and dispensing information. *See* Federal Food, Drug, and Cosmetic Act § 503(b)(2), 21 U.S.C. § 353(b)(2) (1938) (Zuchowski Aff., Ex. 7). Effective in 1961, the Food, Drug and Cosmetic Act was amended to require information for the licensed practitioner to be included with the package from which the drug is to be dispensed. *See* Enforcement of Regulations Drugs and Devices, New Drugs, 25 Fed. Reg. 6985 (July 22, 1960, Proposed Amendments to 21 CFR § 1.106(b)(3) and (4)) (attached as Exhibit 11 to Zuchowski Aff.). The "package inserts" now familiar to consumers came later, in 1976 (for estrogens). Estrogen Preparations, 41 Fed. Reg. 47,573, 47,576 (Oct. 29, 1976) (attached as Exhibit 12 to Zuchowski Aff.).

Lilly's product warnings, Plaintiff cannot prove that any alleged failure to warn by Lilly caused

the injuries that serve as the basis for this action.

**D.      PLAINTIFF'S CLAIM FOR NEGLIGENT FAILURE TO WARN MUST BE
         DISMISSED BECAUSE SHE CANNOT DEMONSTRATE THAT LILLY'S
         WARNINGS WERE RELIED UPON BY DR. COLEMAN.**

A cause of action for negligent failure to warn requires a plaintiff to prove that a

prescription drug manufacturer (1) owed a duty to warn users of potential dangers of a

medication, (2) breached that duty by not adequately warning of risks associated with that drug,

(3) where such breach in fact caused harm because of a failure to warn, (4) where such breach

proximately caused harm because of the failure to warn, and (5) that the failure to warn caused

damages. *See Motus v. Pfizer, Inc.*, 196 F. Supp. 2d 984, 990-91 (C.D. Cal. 2001) (aff'd 358

F.3d 659 (9th Cir. 2004)).  In the context of prescription drugs, a drug manufacturer's warning is

directed at a prescribing physician, not the patient. *Id.* at 990.  Therefore Ms. Hopper must prove

that Lilly failed to warn Dr. Coleman of the risks associated with the product. *See id.*

Plaintiff has not produced any evidence that any failure to warn - even if such failure

existed - caused any harm in fact or proximately.  An inadequate warning may be the specific or

proximate cause of harm only if the failure to warn led to a prescription that would not otherwise

have occurred.  Plaintiff cannot prove that Dr. Coleman was even aware that Lilly's warnings

existed at the time he allegedly prescribed a Lilly product to Ms. Hannah.  Without such proof,

Ms. Hopper cannot then claim that any deficiency in Lilly's warnings or literature was the

specific cause of her harm, proximately caused her harm, or that any additional warnings by

Lilly would have prevented her injuries. *See Motus v. Pfizer Inc.*, 358 F.3d 659, 661 (9th Cir.

2004) (granting summary judgment for defendant, finding that "Because the doctor testified that

he did not read the warning label that accompanied Zoloft or rely on the information provided by

Pfizer's detail men before prescribing the drug to Mr. Motus, the adequacy of Pfizer's warnings is irrelevant to the disposition of this case.").

> 1.    California Courts Have Not and Will Not Apply the Rebuttable Heeding Presumption.

The United States District Court for the Central District of California confirmed that the California Supreme Court has not and will not apply the rebuttable heeding presumption that helps satisfy the Plaintiff's burden of showing an inadequate warning was the proximate cause of ingestion of a drug. *Motus*, 196 F. Supp. 2d at 992 n.5, 994-95. In states that apply this presumption, once a plaintiff establishes that a manufacturer provided an inadequate warning, the burden shifts to the defendant to show that an adequate warning would not have affected the doctor's decision to prescribe the drug at issue. *Id.* at 991. If the defendant fails to make that showing, the presumption satisfies the plaintiff's burden of proof that the defendant's inadequate warning was the proximate cause of the plaintiff's ingestion of the drug. *Id.*

The *Motus* court concluded that California courts do not apply this presumption after reviewing numerous cases that had decided whether proximate cause had been established in failure to warn cases without considering the rebuttable presumption. *Id.* at 993-95; *see e.g.*, *Plenger v. Alza Corp.*, 13 Cal. Rptr. 2d 811 (Cal. App. 1992) (granting summary judgment for defendant after determining risk of infection associated with IUD implantation was so well known that a failure to warn about the risk in product literature could not be cause of decedent's death; no presumption for plaintiff was applied); *Huntman v. Danek Medical, Inc.*, Case No. 97-2155-IEG (RBB), 1998 U.S. Dist. LEXIS 13431 (S.D. Cal. 1998) (granting summary judgment for medical device manufacturer on ground that physician did not rely on statements by manufacturer in making decision to perform treatment, without mentioning heeding presumption); *Plummer v. Lederle Labs.*, 819 F.2d 349 (2d Cir. 1987) (concluding plaintiff failed

to prove adequate warning would have changed physician's conduct and not shifting burden of proximate cause to defendant) (applying California law); *Ramirez v. Plough, Inc.*, 25 Cal. Rptr. 2d 97 (Cal. 1993) (concluding there was no causal connection between defendant drug manufacturer's warning and infant plaintiff's use of aspirin and subsequent development of Reye's Syndrome when plaintiff's mother could not read warning written in English and failed to ask English speaking family members to translate warning into her native Spanish before giving aspirin to infant plaintiff).

Because California does not apply this presumption, the burden falls on Ms. Hopper to prove that Dr. Coleman would have acted differently in prescribing DES to Ms. Hannah if Lilly had provided an adequate warning about the risks associated with its use. Because Ms. Hopper has produced no such evidence, her negligent failure to warn claim must fail.

<div style="margin-left: 2em;">

2.     Plaintiff Has Not Established That Dr. Coleman Did Not Rely On The Many Other Available Sources Of Information About DES When He Made His Decision To Prescribe It For Ms. Hannah.

</div>

The use of DES was, by the time of the prescription here, long standing and well established. Over the quarter century from the first approval of the drug for use in pregnancy, many articles on the subject appeared in peer review journals, texts discussed its use, and standards of practice were established. Without proving that Lilly's warnings - as opposed to those of one of the many other sources where information about DES was available - were used by Dr. Coleman, Plaintiff cannot show that (1) Lilly failed to adequately warn Dr. Coleman, (2) that but for Lilly's warning, Dr. Coleman would not have prescribed DES, or (3) that any warning by Lilly - adequate or not - would have changed Dr. Coleman's prescription practices. Lilly's warnings are not the "but for" cause - the specific, proximate cause - for the injury here without proof that Lilly's warnings even factored into Dr. Coleman's prescription and treatment

decisions. It is rhetoric - not proof - to presume that Dr. Coleman must have read Lilly's warnings. This causal element is one that Plaintiff must prove, and this is a burden she has failed to meet.

It is important to note that Lilly's product literature during the time of Plaintiff's mother's pregnancy did <u>not</u> indicate the use of DES to prevent miscarriage and advised the physician to weigh the risks and benefits before using DES in a known pregnancy. *See* Lilly's DES product literature from September 1969 and June 1971 (Zuchowski Aff., Ex. 9); 1969 and 1970 entries for Lilly's DES in the Physician's Desk Reference (Zuchowski Aff., Ex. 10). While the use of DES in pregnancy was then approved by the FDA, Lilly was not suggesting its use in 1969 and 1970. While it is perfectly acceptable for a physician to write prescriptions for uses that are not listed on every manufacturers' product label, there is no indication that Dr. Coleman looked at Lilly's literature and relied on it. Circumstantial evidence suggests that if Dr. Coleman did follow Lilly's literature during the relevant time period, he would not have prescribed Lilly's DES for Ms. Hannah's use.

**E.    PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM MUST BE DISMISSED BECAUSE PLAINTIFF CANNOT MEET HER BURDEN OF PROVING THAT DR. COLEMAN DETRIMENTALLY RELIED ON STATEMENTS MADE SPECIFICALLY BY LILLY.**

California law and the Restatement Second of Torts maintain a cause of action for negligent misrepresentation when there is a risk of physical harm to a person or property and actual physical harm results. *Friedman v. Merck & Co.*, 131 Cal. Rptr. 2d 885, 901 (Cal. App. 2003); Restatement (Second) of Torts § 311 (1965). Such a claim arises when a person who "in the course of an activity which is in furtherance of his [or her] own interests, undertakes to give information to another, and knows or should realize that the safety of the person [or] others may

depend on the accuracy of the information," the other person reasonably relies on that information and physical harm results. *Friedman*, 131 Cal. Rptr. 2d at 902.

Just as in the claim of inadequate warning, Plaintiff's claim is based on alleged faults in Lilly's writings. Those writings, directed to prescribing doctors, cannot have caused any harm unless the prescribing doctor saw and relied on them. Plaintiff has produced no evidence that Dr. Coleman ever saw, much less relied on, Lilly's product literature. Because Plaintiff cannot prove that Dr. Coleman read and detrimentally relied on warnings provided by Lilly, summary judgment is warranted in Lilly's favor on Plaintiff's claim for negligent misrepresentation.

**F.    PLAINTIFF'S CLAIM FOR BREACH OF WARRANTY MUST BE DISMISSED BECAUSE PLAINTIFF CANNOT PROVE THAT ANY WARRANTY BY LILLY WAS READ OR RELIED UPON BY DR. COLEMAN.**

Plaintiff alleges that Lilly breached both implied and express warranties, although she does not make clear which implied warranties were breached. Although it is not entirely clear what claim is being alleged, it is irrelevant because she cannot prevail on claims of breach of express warranty, breach of the implied warranty of merchantability, or breach of the implied warranty of fitness for a particular purpose. *See Motus*, 196 F. Supp. 2d at 991 (upholding summary judgment in favor of defendant on negligence, strict liability, fraud and breach of warranty claims where plaintiff submitted no evidence that the prescribing physician relied on the defendant drug manufacturer's warnings).

1.    Because There Is No Evidence That Dr. Coleman Relied Upon Any Express Warranties Made By Lilly, Plaintiff's Claim For Breach Of Express Warranty Must Fail.

Under California law, an express warranty is "a written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer ... undertakes to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance." Cal. Civ. Code § 1791.2 (2006); Cal. U. Com. Code § 2313

(2006). Certainly, neither Plaintiff or her mother received any express warranties from any drug manufacturer at the this time, when consumer packaging was not used. There is also no evidence that Dr. Coleman reviewed or relied on any express warranties made by Lilly. Further, Lilly's DES product literature did not include an indication for prevention of miscarriage, the indication for which Dr. Coleman used the drug here. *See* Hopper UPRI Nos. 12 13, 15, 16 (Zuchowski Aff., Ex. 2); Lilly's DES Product literature (Zuchowski Aff., Ex. 9); 1969 and 1970 entries for Lilly's DES in the Physician's Desk Reference (Zuchowski Aff., Ex. 10). Because Plaintiff has produced no evidence that Dr. Coleman relied on any express warranty made by Lilly, her claim for breach of express warranty must fail.

2.    Plaintiff's Claim For Breach of Implied Warranty Of Merchantability Can Not Succeed Because She Has Not Provided Evidence That Dr. Coleman Relied On Lilly's Warnings

Similarly, Plaintiff's claim for breach of implied warranty of merchantability must also fail because she has produced no evidence that Dr. Coleman read or relied on Lilly's warnings. In California, for goods to be merchantable, they must "(1) pass without objection in the trade under the contract description; (2) [be] fit for the ordinary purposes for which such goods are used; (3) [be] adequately contained, packaged and labeled; and (4) conform to the promises or affirmations of fact made on the container or label." Cal. Civ. Code § 1791.1 (2006); Cal. U. Com. Code § 2314 (2006). When Ms. Hannah allegedly took DES, Lilly's product literature did not indicate use during pregnancy for prevention of miscarriage. *See* Lilly's DES product literature from September 1969 and June 1971 (Zuchowski Aff., Ex. 9); 1969 and 1970 entries for Lilly's DES in the Physician's Desk Reference (Zuchowski Aff., Ex. 10). Further, Ms. Hopper has produced no evidence to show that Dr. Coleman was relying on the promises or

affirmations of fact that Lilly made on its container or label. Therefore, Ms. Hopper's claim for breach of implied warranty of merchantability must fail.

3.    Because Plaintiff Cannot Prove Reliance By Dr. Coleman On Lilly's Skill Or Judgment In Treating Her Mother, Plaintiff Cannot Bring A Claim For Breach Of Implied Warranty If Fitness For A Particular Purpose.

If Plaintiff instead intended to assert a claim for breach of an implied warranty of fitness for a particular purpose because of inadequate warnings, that claim also must fail. Such a claim requires the consumer to prove that she relied on the manufacturer's knowledge, skill and judgment in purchasing a product tailored to that consumer's specifications, and that as a result of such reliance the consumer was injured. *See* Cal. Civ. Code § 1791.1 (2006); Cal. U. Com. Code § 2315 (2006) ("Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the *seller's skill or judgment to select or furnish* suitable goods, there is…an implied warranty that the goods shall be fit for such purpose.") (emphasis added); *see also Am. Suzuki Motor Corp. v. Superior Court*, 44 Cal. Rptr. 526, 528 (Cal. Ct. App. 1995) (outlining requirements for implied warranty of fitness for a particular purpose). Here, however, such a warranty was never created by Lilly, so, again, there is no proof that Dr. Coleman relied on *Lilly's* warnings, judgment or skill.

Lilly most certainly did make DES that was accompanied by FDA approved warnings and instructions for use directed to physicians. The indications for use of this drug, in 1969 and 1970, however, did not include prevention of miscarriage, the purposes for which the doctor in this case allegedly prescribed the drug. *See* Lilly's DES product literature from September 1969 and June 1971 (Zuchowski Aff., Ex. 9); 1969 and 1970 entries for Lilly's DES in the Physician's Desk Reference (Zuchowski Aff., Ex. 10).

The allegation here is that Ms. Hopper's mother was prescribed DES for use during pregnancy. There is no evidence whatsoever that Dr. Coleman even read Lilly's product

literature, and even if he had done so, Lilly's literature did not indicate or encourage using DES

during pregnancy. Failure to show that Dr. Coleman relied on Lilly's skill, judgment or

warnings results in a failure of proof on a claim for breach of warranty for a particular purpose.

G.    **PLAINTIFF'S CLAIM FOR STRICT LIABILITY MUST BE DISMISSED BECAUSE PLAINTIFF HAS NOT SHOWN THAT DR. COLEMAN READ OR RELIED ON LILLY'S WARNING.**

In California, a drug manufacturer can be held strictly liable for injuries caused by a

prescription drug if the drug was not accompanied by warnings about the dangerous propensities

that were either known or reasonably scientifically knowable at the time the drug was

distributed. *Brown v. Superior Court*, 751 P.2d 470, 482-83 (Cal. 1988). For a plaintiff to

succeed on any cause of action based on failure to warn, however, the plaintiff must "prove not

only that no warning was provided or the warning was inadequate, but also that the inadequacy

or absence of the warning caused the plaintiff's injury." *Motus*, 196 F. Supp. 2d at 991

(upholding summary judgment in favor of defendant on negligence, strict liability, fraud and

breach of warranty claims where plaintiff submitted no evidence that the prescribing physician

relied on the defendant drug manufacturer's warnings). As with Ms. Hopper's other claims,

because she has submitted no evidence to show that Dr. Coleman read or relied on Lilly's

warnings, she cannot establish that any alleged inadequate warning led to her injuries.

Therefore, Ms. Hopper's strict liability claim must also fail.

H.    **THE SUBSTANTIVE LAW OF CALIFORNIA APPLIES TO BAR MR. CHURCHILL'S CONSORTIUM CLAIM.**

Under California law, claims for loss of consortium are derivative. *See Davis v.*

*Consolidated Freightways*, 29 Cal. App. 4th 354, 358 n.1 (Cal. App. Ct. 1994) ("Because we

find the trial court properly granted summary judgment on [husband's] claims, [wife's] loss of

consortium claim also fails). Because all of Ms. Hopper's claims are barred because she has not

produced any evidence that Dr. Coleman read or relied on Lilly's product warnings, Mr.

Hopper's loss of consortium claim also fails as a matter of law.

<div align="center">

**REQUEST FOR HEARING**

</div>

Pursuant to LCvR 7(f), Lilly requests a hearing on its Motion for Summary Judgment.


ELI LILLY AND COMPANY,

By its attorneys,

/s/ James J. Dillon
James J. Dillon
D.C. Bar No. 485593
Foley Hoag LLP
155 Seaport Boulevard
World Trade Center West
Boston, MA 02210-2600
(617) 832-1000


Dated: November 30, 2006