UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

〜〜〜〜〜〜〜〜〜〜〜〜〜〜〜〜〜〜〜〜〜〜〜〜〜〜〜)
ROBIN HOPPER and STEVEN HOPPER    )
                                  )
                    Plaintiffs,   ) CIVIL ACTION No. 05-CV-02346 (RBW/AK)
        v.                        ) NEXT EVENT:
                                  )    Pretrial Conference May 7, 2007 at 9:30AM
ELI LILLY AND COMPANY,            )
                                  )
                    Defendant.    )
〜〜〜〜〜〜〜〜〜〜〜〜〜〜〜〜〜〜〜〜〜〜〜〜〜〜〜)

**PLAINTIFFS' OPPOSITION TO DEFENDANT ELI LILLY AND COMPANY'S
MOTION FOR SUMMARY JUDGMENT**

**COME NOW** Plaintiffs Robin and Steven Hopper (collectively "Plaintiffs"), through

counsel, and opposes Defendant Eli Lilly and Company's ("Lilly's") Motion for Summary

Judgment.   As grounds therefore, Plaintiffs state that enough evidence exists to allow a

reasonable juror to find for Plaintiffs that a prescribing physician would have heeded a warning

about diethylstilbestrol ("DES") had one been given by Lilly, and for such other and further

reasons as set forth in Plaintiffs' memorandum and attached appendices.

                    Respectfully submitted,

                    AARON M. LEVINE AND ASSOCIATES


                    _____/s/ Aaron M. Levine_____
                    Aaron M. Levine, #7864
                    1320 Nineteenth Street, N.W., Suite 500
                    Washington, D.C. 20036
                    (202) 833-8040

                    COUNSEL FOR PLAINTIFFS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)
ROBIN HOPPER and STEVEN HOPPER    )
                                    )
                Plaintiffs,     ) CIVIL ACTION No. 05-CV-02346 (RBW/AK)
     v.                   ) NEXT EVENT:
                                   )   Pretrial Conference May 7, 2007 at 9:30AM
ELI LILLY AND COMPANY,         )
                                    )
              Defendant.    )
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO
DEFENDANT ELI LILLY'S MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

Page

I.    INTRODUCTION ............................................................................... 1

II.   PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF
      MATERIAL FACTS AND COUNTER-STATEMENT OF
      MATERIAL FACTS ........................................................................ 5

      A.    Plaintiffs' Responses to Defendant's Alleged Facts ..................................... 5

      B.    Plaintiffs' Counter-Statement of Material Facts in Issue ............................. 6

III.  ARGUMENT ................................................................................... 7

      A.    STANDARD ON SUMMARY JUDGMENT ............................................. 7

      B.    CALIFORNIA LAW IS APPLICABLE ...................................................... 9

      C.    THE "LEARNED INTERMEDIARY" STANDARD APPLIES ................. 9

      D.    DEFENDANT IS LIABLE FOR NEGLIGENT FAILURE TO WARN ....... 9

            1.   The Heeding Presumption Exists in California ........................................... 9

            2.   If Lilly Had Tested and Warned, DES Would Never Have Been Used
                 In Pregnant Women ..................................................................... 14

            3.   The Multiplicity of Manufacturers Does Not Make Any Difference to
                 the Heeding Presumption ................................................................ 15

            4.   Defendant's 1969 and 1970 Change in Its *Physicians' Desk Reference*
                 Entry for DES Does Not Eliminate the Fact That Defendant Failed to
                 Adequately Warn About DES ......................................................... 16

      E.    PLAINTIFFS' CLAIMS FOR NEGLIGENT MISREPRESENTATION,
            BREACH OF WARRANTY, AND STRICT LIABILITY ARE VIABLE ... 18

      F.    MR. HOPPER'S CLAIM IS VALID ........................................................ 19

IV.   CONCLUSION ................................................................................ 19

## **TABLE OF AUTHORITIES**

### **CASES**

.................... 13

1. Brochu v. Ortho Pharmaceutical Corp., 642 F.2d 652 (1st Cir. 1981)

2. Brown v. Superior Court, 751 P.2d 470 (Cal. 1988) ................................. 18

3. In re Complex DES Litigation, No. 830109 (Cal. Sup. Ct. Jul. 29, 1988) ............. 4, 15

4. D'amico v. Board of Medical Examiners, 520 P.2d 10 (Cal. 1974) ....................... 8

5. Dalke v. The Upjohn Co., 555 F.2d 245 (9th Cir. 1977) ......................................... 16

6. DeLuryea v. Winthrop Lab's, 697 F.2d 222 (8th Cir. 1983) .................................. 12

7. Garside v. Osco Drug, 976 F.2d 77 (1st Cir. 1992) ................................................ 12

8. Great Northern Ins. Co. v. Paino Assoc's, 364 F. Supp. 2d 7 (D. Mass. 2005) ....... 8

9. Hansch v. Eli Lilly and Co., No. 04-00122 (N.D. Cal. 2005) ................................. 1, 10-11

10. Hibbs v. Abbott Labs, 814 P.2d 1186 (Wash. Ct. App. 1991) ................................ 12-13

11. Huntman v. Danek Medical, Inc., No. 97-2155-IEG (RBB),
     1998 U.S. Dist. LEXIS 13431 (S.D. Cal. 1998) ....................................... 11

12. Knowlton v. Deseret Medical, Inc., 930 F.2d 116 (1st Cir. 1991) ........................... 11

13. Medics Pharm. Corp. v. Newman, 378 S.E.2d 487 (Ga. Ct. App. 1989) ............... 16

14. McCue v. Norwich Pharmacal Co., 453 F.2d 1033 (1st Cir. 1972) ....................... 13

15. Miskulin v. Eli Lilly and Co., No. 418517 (Cal. Sup. Ct. Oct. 25, 2005) .............. 1, 10-11

16. Motus v. Pfizer Corp., 196 F. Supp. 2d 984 (C.D. Cal. 2001) ................................. 9-10, 18

17. Motus v. Pfizer Corp., 358 F.3d 659 (9th Cir. 2003) ............................................... 9, 10

18. Plenger v. Alza Corp., 13 Cal. Rptr. 2d 811 (Cal. Ct. App. 1992) ......................... 11

19. Plummer v. Lederle Lab's, 819 F.2d 349 (2d Cir. 1987) ......................................... 9, 10

20. Ramirez v. Plough, Inc., 863 P.2d 167 (Cal. 1993) ................................................ 11

21. Shields v. Eli Lilly and Co., 895 F.2d 1463 ............................................................ 8

22. Sterling Drug, Inc. v. Cornish, 370 F.2d 82 (8th Cir. 1966) ................................... 13

23. Sterling Drug, Inc. v. Yarrow, 408 F.2d 978 (8th Cir. 1969) .................................. 13

24. Zavala v. Board of Trustees, 20 Cal. Rptr. 2d 768 (Cal. Ct. App. 1993) ................. 11

## OTHER AUTHORITIES

R. Apfel and S. Fischer, To Do No Harm, DES and the Dilemmas of Modern Medicine (Yale University Press 1984)

CDC Resource Focuses on DES Exposure, 289 J. Amer. Med. Assn. 1624 (2003)

DES: The Complete Story, Orenberg, St. Martin Press 1981

Daughters At Risk: A Personal DES Story, Doubleday (1981))

W.J. Dieckmann, M.D., et al., Does the Administration of Diethylstilbestrol During Pregnancy Have Therapeutic Value?, 66 Amer. J. of Ob. and Gyn. 1062, 1074 (1953)

Robert K. Enders, "Mink Production in Relation to Stilbestrol," 16:7 The Fur Journal 4, 10 (1950)

The Greatest Experiment Ever Performed On Women, Seaman, Hyperion Press, (2003)

R.R. Greene et. al., "Experimental Intersexuality: The Paradoxical Effects of Estrogens on the Sexual Development of the Female Rat," in The Anatomical Record (Edward A. Boyden, ed. 1939)

Hearing before the House Committee on Interstate and Foreign Commerce, 86th Cong., Second Session (1960)

Hearing Before the Subcommittee on Government Operations 92nd Congress Nov 11, 1971

Aaron Levine, Identification of Manufacturer of DES, 46 Proof of Facts 108 (1986)

National Institutes of Health, Were You Born Between 1938 and 1971 Or Pregnant Then?  If So, You Could Be Exposed to DES (January 1995)

Cynthia Orenberg, DES: The Complete Story (St. Martin's Press 1981)

The Physicians' Desk Reference to Pharmaceutical Specialties and Biologicals (Henrietta Bull ed., Medical Economics, Inc. 8th ed. 1954)

The Physicians' Desk Reference to Pharmaceutical Specialties and Biologicals (Henrietta Bull ed., Medical Economics, Inc. 13th ed. 1959)

The Physicians' Desk Reference to Pharmaceutical Specialties and Biologicals (Henrietta Bull

and Barbara Huff, eds., Medical Economics, Inc. 18th ed. 1964)

<u>The Physicians' Desk Reference to Pharmaceutical Specialties and Biologicals</u> (Henrietta Bull and Barbara Huff, eds., Medical Economics, Inc. 23rd ed. 1969)

Restatement (Second) of Torts, §402A

I. INTRODUCTION

There is no dispute that California law governs this action (Def.'s Memo. at pg. 6). There is also no dispute that two California courts have rejected this identical argument by this Defendant in the last two years. See Miskulin v. Abbott Lab's, No. 418517 (Cal. Sup. Ct. Oct. 25, 2005) and Hansch v. Eli Lilly and Co., No. 04-00122 (N.D. Cal. 2005), attached hereto as Appendices 19 and 20. Both Miskulin and Hansch were Diethylstilbestrol ("DES") cases in which the mother's prescribing physician was dead – identical facts to the case at hand. The only California case Defendant is able to cite, Motus v. Pfizer Corp., 196 F. Supp. 2d 984 (C.D. Cal. 2001), was decided prior to these two cases, was not a DES case, and the physician involved specifically testified that he read and *ignored* the manufacturer's warnings. Lilly should not be taking up this Court's time on California issues that have already been contemplated and decided by California courts.

Remarkably, Lilly filed this exact same motion today in another DES case where Massachusetts's law applies and stated that their own heeding presumption argument is untenable in a state that recognizes market share liability (California, like Washington, recognizes market share liability). See relevant pages from Lilly's Memo. in Kasparian, et al. v. Eli Lilly and Co., Civil Action No. 06-00290 (D.D.C.) filed January 25, 2007, attached hereto as App. No. 22. In attempting to distinguish Hibbs, Lilly states:

> It follows that Washington, in a market share case, could not require proof that a manufacturer's warnings were read and relied upon as there's no requirement to prove that the defendant's product was involved in the case at all. Instead, the market share standard for liability relaxes traditional causation principles that require a plaintiff to prove that the defendant was the cause in fact and the proximate cause of her injuries.

Id. at 13-14 n.6.

1

Plaintiff could not have made the argument better herself.

Plaintiffs have identified Eli Lilly and Company as the manufacturer responsible for the DES which caused Plaintiff Robin Hopper's injury.  Plaintiffs are entitled to the "heeding presumption," which states: "where a warning is given, the seller may reasonably assume that it will be read and heeded."  Rest. Torts 2d § 402A, comment j.  Had Lilly adequately warned of the risk of uterine malformation to the exposed daughter by way of: 1) a change in the Physicians' Desk Reference, 2) a change or new mailing of their product brochure, 3) communication through Lilly detailmen to the doctors they visit to advise of a new or different warning, 4) a "dear doctor" letter, or 5) notification to the FDA, which would have put out notices to doctors.  One way or another, that warning would have reached prescribing physicians.  Lilly never warned of any risk in any manner or by any method.  There is no evidence that the prescribing physician would have deviated from the applicable standard of care or ignored any of the above warnings had Lilly issued one.

Defendant asks the court to find that Dr. Coleman, the prescribing doctor, would have: 1) prescribed DES even if Lilly never promoted the drug; or 2) would have intentionally ignored published warnings; or 3) would have intentionally refused to advise Plaintiff Robin Hopper's mother of published risks, or 4) that Dr. Coleman, all by himself, developed, promoted, tested, and prescribed DES without any reliance on literature from the manufacturer.  Lilly provides no substantiation, by way of affidavit or deposition, to support any of these bizarre assertions.

DES, a mid-20th century fertility nostrum, was banned in the 1970's by the Food and Drug Administration, recalled by the manufacturers and branded a carcinogen and teratogen by the World Health Organization, the National Institutes of Health (NIH), the American College of Obstetrics and Gynecology, and every health organization devoted to reproductive medicine.

See App. 1.  Even Defendant Eli Lilly and Company ("Eli Lilly" or "Lilly") admits it was a mistake.  See CDC Resource Focuses on DES Exposure, 289 J. Amer. Med. Assn. 1624 (2003) at App. 2; See also DES: The Complete Story, Orenberg, St. Martin Press 1981, The Greatest Experiment Ever Performed On Women, Seaman, Hyperion Press, (2003); Daughters At Risk: A Personal DES Story, Doubleday (1981)).

The drug was sold to five to ten million women as a universal remedy to produce plump and healthy babies even though it never worked.[1]  See W.J. Dieckmann, M.D., et al., Does the Administration of Diethylstilbestrol During Pregnancy Have Therapeutic Value?, 66 Amer. J. of Ob. and Gyn. 1062, 1074 (1953) attached at App. 3.  Lilly failed to conduct a single test to investigate the DES effect on the forming female daughter even though it knew since the 1940s of reports in the literature that estrogen and DES in high doses stunted the reproductive organs of the exposed daughter in animals.  See Robert K. Enders, Mink Production in Relation to Stilbestrol, 16:7 The Fur Journal 4, 10 (1950) App. 4.

Had Lilly performed the most rudimentary of testing on DES in humans or animals prior to marketing DES for use in pregnancy it would have discovered that the drug caused malformation, cancer, sterility and a plethora of reproductive tract malformations to the exposed daughter.  See R. Apfel and S. Fischer, To Do No Harm, DES and the Dilemmas of Modern Medicine (Yale University Press 1984); C. Orenberg, DES: The Complete Story, (St. Martin's Press 1981); and Aaron Levine, Identification of Manufacturer of DES, 46 Proof of Facts 108 (1986).  From their interrogatory answers, Lilly has demonstrated that it conducted no tests.  See Defendant Eli Lilly and Company's Responses to Plaintiff's First Set of Interrogatories, attached

---

1 In 1968 the National Academy of Sciences in its review of the effectiveness of DES for the purpose of preventing threatened or habitual abortion found that effectiveness cannot be demonstrated by the literature or its own experience.  See Hearing Before the Subcommittee on Government Operations 92nd Congress Nov 11, 1971, P. 77. At this time Lilly was asked by the F.D.A. to provide evidence that DES was effective and failed to provide any such information.

as App. 5.

Plaintiffs have identified Lilly as the manufacturer of the DES Plaintiff Robin Hopper was exposed to, and Lilly does not contest this identification on summary judgment. As such, Plaintiffs are entitled to the inference that the Lilly product was dispensed to Plaintiff Robin Hopper's mother. All of Lilly's arguments regarding the multiplicity of DES manufacturers should be ignored.

Under California law, Plaintiffs are entitled to proceed under a claim of negligence, namely failure to warn, in addition to breach of warranty, strict liability, and negligent misrepresentation. At summary judgment, Plaintiffs are entitled to favorable inferences that 1) Lilly failed to adequately test DES for safety or efficacy, 2) DES was a teratogen and a defective or unreasonably dangerous drug, 3) Lilly failed to warn of any risks of injury to the exposed daughter, and 4) that Lilly went to the market ignoring and suppressing information about such risks and injuries. For the purpose of this motion, Lilly must concede that the warning attached as Exhibit No. 5 to the Statement of Julius Piver, M.D., App. 6, should have, in the exercise of due care, accompanied its DES.

The Defendant promoted DES for use by pregnant women, knowing it would affect the uterus of both mother and daughter. Lilly also knew the exposed daughter's reproductive injuries would not be put to the test or otherwise discovered for thirty-plus years. During that time, doctors have passed away, including the prescribing physician in this case. This is not the fault of Plaintiffs but the fault of Defendant Lilly in placing an untested bomb on the market with a forty-year fuse.

## II.    PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS AND COUNTER-STATEMENT OF MATERIAL FACTS

A.    <u>Plaintiffs' Responses to Defendant's Alleged Facts</u>

1-5.    Admitted.

6.    Denied.  While Plaintiffs have not been able to locate medical records regarding Plaintiff Robin Hopper's exposure to DES, Robin Hopper's mother, Fayola Hannah, remembers taking "stilbestrol" pills from a Lilly bottle.  <u>See</u> Deposition of Fayola Hannah, pgs. 22-24, as App. 7.  The white cross-score pills Ms. Hannah describes are consistent with Lilly's DES.  <u>See</u> Statement of John J. Hefferren, Ph. D., App. 8.

7.    Denied.  Most companies listed in the Red and Blue Book were not national manufacturers or distributors as Defendant implies.  Most were generic, local repackagers and bottlers.  The great majority of the listings consist of local rebottlers who sold locally and regionally in limited areas of the United States.  <u>See</u> Affidavit of Harold Sparr, R. Ph., attached as App. 9, ¶9-11.  The Red Book and Blue Book are technical, international catalogues and are not accurate representations of what drugs were available in a particular market.  <u>Id.</u>  While Defendant claims that there were sixty brands of DES, there were only six to eight national companies; the representation that there was a multiplicity of DES manufacturers is simply false.  In addition, all of the DES manufacturers followed uniform labeling and warnings as promulgated by Defendant Eli Lilly.  <u>See</u> Letter from Dr. Hines (Lilly) to Dr. Morrell (Squibb), dated May 13, 1941, App. 10.

8.    Denied.  As stated above, DES was manufactured by only a few companies, and rebottled by many others.  Furthermore, Eli Lilly and Company held a significant share of the California DES market.  According to California's market share matrices, 1969-1970, the years of Plaintiff Robin Hopper's gestation, Eli Lilly manufactured up to twenty times more DES than

most of its competitors.  <u>See</u> Appendix to <u>In re Complex DES Litigation</u>, No. 830109 (Cal. Sup. Ct. Jul. 29, 1988), attached as App. 11.  Nationally, Lilly stated to Congress in 1960 that it manufactured 75% of all DES sold in the United States.  <u>See</u> <u>Hearing before the House Committee on Interstate and Foreign Commerce</u>, 86th Cong., Second Session (1960) (testimony of Thomas Carney, Vice President for Eli Lilly and Company), pg. 283,  App. 12.

9.    Admitted.

10.    Denied.  Plaintiffs' expert Dr. Julius Piver will testify to the practice of medicine in the years 1969-1970, where he will state that the general practice of doctors was to rely on Lilly's materials.  <u>See</u> Piver Affidavit, ¶ 7-9, App. 6.

11.    Denied as incomplete.  Defendant recommended and promoted DES for two decades for use in preventing miscarriage, <u>see</u> 1954 <u>The Physicians' Desk Reference</u> ("<u>PDR</u>"), page 467, App. 13; 1959 <u>PDR</u>, page 699, App. 14; 1964 <u>PDR</u>, page 693, App. 15, and never explicitly warned of any particular risk to pregnant women or their daughters.  Defendant is not entitled to argue that it did not hold its product out as a preventative in miscarriage.  The question is not indication, but risk.

B.    <u>Plaintiffs' Counter-Statement of Material Facts in Issue</u>

12.    Diethylstilbestrol was an ineffective, teratogenic, and carcinogenic drug.  A reasonable and prudent drug manufacturer such as Eli Lilly and Company would have known and warned of its dangers and taken it off the market by 1953.  The warning attached as Exhibit 5 to Dr. Piver's Affidavit at App. 6 should have been given to the medical community.  <u>See</u> Falk Statement, ¶2, ¶3, and ¶6, App. 16.

13.    Dr. Julius Piver will testify that Eli Lilly should have issued warnings regarding the dangers of DES for pregnancy use, and that had Lilly issued a warning, it would have been a

departure from the standard of care for an obstetrician to prescribe DES for a pregnant woman. <u>See</u> Piver Affidavit, ¶9-10 and ¶14, App. 6.

14.     DES labeling was industry-wide.  Lilly's New Drug Application with the FDA for DES was adopted at their request by the entire industry.   DES manufacturers formed a Committee led by Lilly's submission for the approval of DES use in pregnant women.  <u>See</u> Letter from Dr. Hines (Lilly) to Dr. Morrell (Squibb), dated May 13, 1941, App. 10.  Lilly never warned of the DES risk of malformation to the offspring even though there were reports in the literature.   <u>See</u> R.R. Greene et. al., "Experimental Intersexuality: The Paradoxical Effects of Estrogens on the Sexual Development of the Female Rat," in <u>The Anatomical Record</u> (Edward A. Boyden, ed. 1939), as App. 17.

15.     Lilly was the *only* company listing for DES in the 1969 <u>PDR</u> index.  <u>See</u> 1969 <u>PDR</u>, pg. 224, App. 18.  All the other companies listed only have brand name products.  No company other than Lilly was listed in the <u>PDR</u> as selling or recommending DES.

16.     DES is a banned drug; it never would have received approval from the Food and Drug Administration if proper testing and warning had been done.  <u>See</u> Falk Statement, ¶ 11, App. 10.

## III.    ARGUMENT

### A.     STANDARD ON SUMMARY JUDGMENT

The Court must view the law and the facts in a light most favorable to the Plaintiff.  If the evidence presented raises more than the "slightest doubt," is more than "utterly implausible," presents more than a "mere scintilla" or contains more than a "metaphysical doubt," the nonmovant is entitled to go to trial.  <u>See</u> Edward J. Brunet, et al., <u>Summary Judgment Federal Law and Practice</u> 97-122 (2d ed. 2000).  In order to prevail, Lilly must present to the court facts

that preclude the possibility that a reasonable juror could find in favor of the plaintiff.  The DES

case of <u>Shields v. Eli Lilly and Co.</u>, which centered on the sufficiency of proof in opposing

summary judgment, sets the bar:

> In a world short of absolutes, the jury is called upon to process less than perfect evidence.  Litigants may not offer speculations or slight possibilities in support of their claims; but neither are they limited to offering only the incontrovertible.  The jury's function contemplates that evidence may be less than indubitable . . . .  Every conceivable alternative theory of causation need not be extirpated by a litigant seeking the jury's decision.

<u>Shields v. Eli Lilly and Co.</u>, 895 F.2d 1463, 1467 (D.C. Cir. 1990).  Similarly:

> Summary judgment should be granted only when the court, viewing the evidence in the light most favorable to the non-moving party, determines that no genuine issue of material fact exists . . . .  Facts are 'material' if they possess 'the capacity to sway the outcome of litigation under the applicable law.'

<u>Great Northern Ins. Co. v. Paino Assoc's</u>, 364 F. Supp. 2d 7 (D. Mass. 2005).

> In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion.

<u>D'Amico v. Board of Medical Examiners</u>, 520 P.2d 10 (Cal. 1974).

> The "significantly probative" test does not require the nonmoving party to discredit every conceivable alternative theory of causation.  As this court noted in Elliott v. Michael James, Inc., 165 U.S. App. D.C. 356, 507 F.2d 1179 (D.C. Cir. 1974), "there is no requirement that the circumstances, to justify the inferences sought, negative every other positive or possible conclusion."  To be significantly probative, evidence need only be sufficient to permit a reasonable juror, indulging all possible inferences, to find that the party proved the element at issue.

<u>Shields</u>, 895 F.2d at 1465.

Plaintiffs are entitled to every favorable inference.  They are entitled to knit together the

various pieces of evidence to construct a web of information and evidence.

> It is enough if the item could reasonably show that a fact is slightly more probable than it would appear without that evidence. Even after the probative force of the evidence is spent, the proposition for which it is offered still can seem quite improbable. Thus, the common object that the inference for which the fact is offered 'does not necessarily follow' is untenable. It poses a standard of conclusiveness that very few single items of circumstantial evidence could ever meet. A brick is not a wall.

Edward W. Cleary, et al., <u>McCormick on Evidence</u> § 185, at 542-43 (3d ed. 1984).

At this stage of the proceedings, negligence in failure to warn, proof of exposure, proof of product identification, and proof that DES is a defective and dangerous drug are presumed.

B.    CALIFORNIA LAW IS APPLICABLE

Plaintiffs do not dispute Defendant's contention that California law governs this action; however, as illustrated <u>infra</u>, Defendant has misstated California law which grants the heeding presumption, <u>see</u> part D, <u>infra</u>.

C.    THE "LEARNED INTERMEDIARY" STANDARD APPLIES

Plaintiffs also do not dispute Defendant's contention that the learned intermediary standard – that warnings involving prescription drugs are evaluated from the perspective of the doctor who prescribes the drug, not the patient who receives it – applies in California.

D.    DEFENDANT IS LIABLE FOR NEGLIGENT FAILURE TO WARN

1.    <u>The Heeding Presumption Exists in California</u>

Defendant cites <u>Motus v. Pfizer Corp.</u>, 196 F. Supp. 2d 984 (C.D. Cal. 2001) for the proposition that no heeding presumption exists in California. However, not only are the facts of this case different from that in <u>Motus</u>, both the Northern District of California and the California Superior Court for San Francisco have ruled the heeding presumption applies to DES cases even where the prescribing physician passed away.

<u>Motus</u> was a case where a patient committed suicide after taking the antidepressant

Zoloft.  Id. at 986.  However, in Motus, the patient's prescribing physician affirmatively admitted at deposition that he did not and would not read or rely on any of the materials regarding Zoloft provided by the manufacturer, nor did he read the PDR entry for Zoloft.  Id. at 996.  The prescribing physician also testified that he knew of the research linking drugs such as Zoloft to suicide, but discounted it.  Id. at 998.  The doctor in Motus took off on his own.  There is no evidence of any such deviation in this case.

The Motus District Court decision was appealed, and the Ninth Circuit upheld Motus, but on different grounds.  The Ninth Circuit stated:

> [w]e agree with the Second Circuit that a product defect claim based on insufficient warnings cannot survive summary judgment if stronger warnings would not have altered the conduct of the prescribing physician.  See Plummer v. Lederle Labs., Div. of Am. Cyanamid Co., 819 F.2d 349, 358-59 (2d Cir. 1987)

Motus v. Pfizer Corp., 358 F.3d 659, 661 (9th Cir. 2003).  There is no evidence here that a warning would not have altered the conduct of the prescribing physician.

In Plummer, the physician knew of the warnings omitted from a package insert and disregarded them. 819 F.2d at 358.  The Second Circuit in Plummer, whose interpretation of California law the Ninth Circuit based its holding, began its analysis by stating, "[o]nce [a] warning is given, there is a presumption that it will be read and heeded."  Id. at 355-56.  Neither the Ninth nor the Second Circuit denied the existence of the heeding presumption in California.

Since Motus, two California courts have denied summary judgment based on the heeding presumption.  See relevant pages from Lilly's Brief and Order Denying Summary Judgment in Miskulin v. Abbot Lab's, No. 418517 (Cal. Sup. Ct. Oct. 25, 2005), as App. 19; Hansch v. Eli Lilly and Co., No. 04-00122 (N.D. Cal. 2005), as App. 20.

In Hansch and Miskulin, courts in California, interpreting California law, denied this very same Defendant's motion for summary judgment based on the same heeding presumption

grounds.  See relevant pages from Lilly's Brief and Order Denying Motion in <u>Miskulin v. Abbott</u> <u>Lab's</u>, App. 19.  In both cases, the doctor who prescribed DES to the mother had passed away decades before.  Lilly argued unsuccessfully that, because the plaintiff cannot ask the deceased doctor whether a proper warning would have made a difference, Lilly could not be found liable for her injuries.  Both courts ruled otherwise.  See <u>Hansch</u>, App. 20 ("[b]ased on the heeding presumption, disputed issues of material fact exist as to whether Plaintiff's injuries were caused by Defendant's failure to warn"); <u>Miskulin</u>, App. 19.

Defendant's other cited cases are inapposite because all of them include specific evidence that a warning was not read or heeded.  In <u>Plenger v. Alza Corp.</u>, 13 Cal. Rptr. 2d 811 (Cal. Ct. App. 1992), there was testimony that the risk not warned of was of "general and elemental" knowledge to the medical community, so no warning was needed.  <u>Id</u>. at 819. <u>Huntman v. Danek Medical, Inc.</u>, No. 97-2155-IEG (RBB), 1998 U.S. Dist. LEXIS 13431 (S.D. Cal. 1998) had testimony from the prescribing physician regarding his knowledge of the risks of the orthopedic device at issue, specifically rebutting any heeding.  <u>Ramirez v. Plough, Inc.</u>, 863 P.2d 167 (Cal. 1993) primarily concerns whether a drug's warnings should be in Spanish.  The Supreme Court of California, in a single line, states that there is no presumption for an English-language warning because, in that case, it was unread.  <u>Id</u>. at 177.  Defendant presents no cases that show that the heeding presumption does not exist in California.

Plaintiff's expert, Dr. Julius Piver, will testify that the nationwide standard of care in the OB/GYN field in 1970 was to prescribe DES in accordance with Defendant's labeling.  See Statement of Julius Piver, ¶ 9, App. 6.  California law regarding medical malpractice states that "[n]egligence on the part of a physician or surgeon will not be presumed; it must be affirmatively proved."  <u>Zavala v. Board of Trustees</u>, 20 Cal. Rptr. 2d 768, 773 (Cal. Ct. App.

1993) (citing <u>Huffman v. Lindquist</u> 234 P.2d 34 [1951]).  Absent contrary evidence, Plaintiffs are entitled to the inference that Dr. Coleman adhered to the standard of care of physicians in his field, which meant he would have kept up with new developments, read the literature or any "Dear Doctor" letters, and listened to detailmen.

Plaintiffs demonstrated that Defendant in this case failed to give any warning whatsoever at any time about the harmful effects of DES in pregnant women.  To rebut the heeding presumption, a defendant must present evidence that affirmatively demonstrates that a prescribing physician would have disregarded a product warning.  <u>See</u> <u>Garside v. Osco Drug</u>, 976 F.2d 77, 81 (1st Cir. 1992) (finding a physician's statement that he never warned his patients of the risks of drugs was sufficient to rebut the presumption).  Lilly must present evidence that Dr. Coleman would not have read or heeded any warning that might have been given and not then shared the warning with Plaintiff Robin Hopper's mother.  Since Defendant presented no such evidence, its motion must fail.

Instead of presenting affirmative evidence that Dr. Coleman ignored the warnings regarding DES, Lilly claims that, whenever the prescribing physician is dead, a DES case cannot be proven.  This contention is neither the law nor true in this case.  In <u>DeLuryea v. Winthrop Lab's</u>, 697 F.2d 222 (8th Cir. 1983), a non-DES pharmaceutical case, a plaintiff provided no testimony from her prescribing pharmacists, one of whom was deceased, that they would have acted differently with a warning.  The Eighth Circuit found that "failure to produce testimony of the prescribing doctors was not fatal to DeLuryea's case" if adequate warnings are presumed heeded.  697 F.2d at 225.

Even if a doctor could be considered an intervening cause, when a pharmaceutical manufacturer's failure to warn contributes to the doctor's negligent prescription, the

manufacturer remains liable.  See Brochu v. Ortho Pharmaceutical Corp., 642 F.2d 652, 660 (1st Cir. 1981); McCue v. Norwich Pharmacal Co., 453 F.2d 1033, 1035 (1st Cir. 1972); Sterling Drug, Inc., v. Yarrow, 408 F.2d 978, 994 (8th Cir. 1969) ("The trial court properly concluded that any failure of the appellee's physician to learn of warnings from sources other than appellant did not relieve appellant of liability"); Sterling Drug, Inc. v. Cornish, 370 F.2d 82, 85 (8th Cir. 1966).

Hibbs v. Abbott Lab's, 814 P.2d 1186 (Wash Ct. App. 1991) is the only reported appellate decision that addresses the heeding presumption as it pertains to DES injuries.  In Hibbs, the prescribing obstetrician testified that he prescribed DES based on his own observations and did not rely on any drug manufacturer's product literature.  Id. at 1187. Therefore, the defendants argued that any failure to warn on their part was irrelevant.  Id. at 1188.

Even after the doctor's testimony, the Hibbs Court rejected the drug company's arguments and reversed summary judgment for the defendant drug manufacturer.  The Court held:

> Here, Dr. Rutherford's testimony was only that he did not rely on Kirkman or any other pharmaceutical company's promotions literature.  He prescribed DES because of what he knew about the drug from his own vast experience and other doctors' work.  Based on these statements, Kirkman would have us conclude that if the drug companies had researched DES, as Drs. Lynch and Stillman claim they should have, and warned about not only the drug's lack of efficacy in the prevention of spontaneous abortions, but also the drug's significant dangers when ingested during pregnancy, Dr. Rutherford would have nevertheless ignored those warnings.
>
> Kirkman's argument is flawed.  Dr. Rutherford's reliance on his own knowledge of DES in deciding to prescribe the drug to Bernadine Raymond has no bearing on whether he would have heeded warnings, had any been given, that the drug posed serious risks to the unborn children of pregnant women.  Dr. Rutherford was simply never asked this question.

Id.

Since Dr. Coleman is deceased, Plaintiffs are entitled to the presumption that he would have heeded an adequate warning if Lilly had given one. Lilly has presented *no evidence* to the contrary, much less any direct evidence that Dr. Coleman did not read or rely on manufacturer warnings.

2.    If Lilly Had Tested and Warned, DES Would Never Have Been Used In Pregnant Women

Lilly was negligent from day one in placing DES on the market for use by pregnant women without any testing or warning whatsoever. Had Lilly performed appropriate testing on DES in humans or animals prior to marketing DES for use in pregnancy, it would have discovered that the drug caused malformation, cancer, sterility, and a plethora of reproductive tract malformations in the exposed daughter. See Greene et. al., App. 14. DES never should have made it to the market. See Roberta J. Apfel, M.D., M.P.H. & Susan M. Gedaro, M.D., To Do No Harm, DES and the Dilemmas of Modern Medicine (Yale University Press 1984); Cynthia Orenberg, DES: The Complete Story (St. Martin's Press 1981); and Aaron M. Levine, Identification of Manufacturer of Diethylstilbestrol (DES), in 46 Am. Jur. Proof of Facts 2d 59 (Christian C. Bjorkland ed., 1986).

Plaintiffs' OB/GYN experts, Dr. Piver and Dr. Falk, will testify that Defendant failed to test and warn of the dangers of DES, that Defendant knew or should have known that DES was an unreasonably dangerous drug, and that, had an adequate warning been given, DES would not have been prescribed to pregnant women in the ordinary course of OB/GYN practice. See Piver Statement, ¶6-14, App. 6 and Falk Statement, ¶2-8, App. 16. Had Defendant shared what it knew and should have known about DES, a reproductive tract-mutating teratogen to a developing fetus, with the medical community, no doctor would have prescribed this drug to a

14

pregnant woman and the Food and Drug Administration would not have approved it.  See Dieckmann, App. 3; Enders, et al., App. 4.

        3.        The Multiplicity of Manufacturers Does Not Make Any Difference to the Heeding Presumption

Lilly argues that Dr. Coleman could have learned about DES from other sources.  See Defendant's Motion for Summary Judgment, pg. 11.  Essentially, Lilly contends – supported by no authorities – that, since DES was sold and labeled by other manufacturers, it is somehow insulated from the heeding presumption.  Dr. Coleman may have looked at other labeling or literature, the argument goes, therefore Plaintiffs cannot prove that a Lilly DES warning would have changed the course of Plaintiff's treatment.

This argument is specious in three aspects:

1)  DES labeling was standardized upon Lilly's request.  Lilly's industry committee recommended that no additional warnings be added to DES when prescribed to pregnant women.  See Letter from Dr. Hines to Dr. Morrell, App. 10.  It is therefore inaccurate to say that there were many sources about DES independent of Eli Lilly and Company.

2) Lilly was the largest supplier of DES, the foremost promoter of DES, the leading advocate, the primary source of information about DES and had the most detailmen promoting DES.  For example, in the 1969 entry for DES, Lilly is the *only* manufacturer to appear with the text of their labeling.  See 1969 PDR, App. 18 pg. 224.  For two decades starting in the early 1950's, Lilly recommended DES to the medical community to treat conditions in pregnant women without any warnings of serious and permanent injury to the fetus or contraindications for pregnancy, See 1955 PDR, page 467, App. 13; 1959 PDR, page 699, App. 14; 1964 PDR, page 693, App. 15.

There was actual reliance by the OB/GYN community upon Lilly's expertise as a prudent

15

drug manufacturer to test its products; physicians prescribed according to Lilly's representations in the <u>PDR</u> and other marketing publications that DES was safe and effective to use in accidents of pregnancy.  <u>See</u> Piver Statement, ¶7 & ¶9-11, App. 6.

3) The California decisions creating the DES matrix for market share liability show Lilly as the prime supplier – sometimes twenty to one – over the other DES manufacturers.  <u>See</u> Appendix to <u>In re Complex DES Litigation</u>, App. 11.

The Ninth Circuit addressed the heeding presumption in cases where multiple manufacturers made the same product.  In <u>Dalke v. The Upjohn Co.</u>, 555 F.2d 245 (9th Cir. 1977), the plaintiff filed suit against three manufacturers of tetracycline for tooth discoloration because she could not determine the brand of tetracycline she ingested.  <u>Id.</u>, 555 F.2d at 247. The defendants in <u>Dalke</u> argued that, even if their warnings were inadequate, plaintiff's doctor could not recall which manufacturer's warnings he may have read.  <u>Id.</u> at 249.  The Court held:

> In our case, although Dr. Corlett could not recall *which* PDR entry
> or label he read, he indicated that he *had* read and relied on one of
> them.  In light of the similarity between the three companies'
> warnings we do not believe that his failure to identify the one
> specific entry he read should break the chain of causation.

<u>Id.</u>  A reasonable juror could find that Dr. Coleman would have received a Lilly warning, the industry would have followed the Lilly warning's lead, read the <u>PDR</u>, heard from a detailman, read a "Dear Doctor" letter, or in some other way a Lilly warning would have come to Dr. Coleman's attention.

4.    <u>Defendant's 1969 and 1970 Change in Its *Physicians' Desk Reference* Entry for DES Does Not Eliminate the Fact That Defendant Failed to Adequately Warn About DES</u>

"Whether a manufacturer or distributor of DES should have foreseen it would be used for preventing miscarriages is a question of fact for the jury."  <u>Medics Pharm. Corp. v. Newman</u>, 378 S.E.2d 487, 488 (Ga. Ct. App. 1989).  For decades, Lilly's <u>PDR</u> entry, promotional material,

and labeling read that it was for safe use in pregnancy.  See 1955 PDR, page 467, App. 13; 1959 PDR, page 699, App. 14; 1966 PDR, page 693, App. 15.  In 1951, Eli Lilly's publication De Re Medica advertised DES as the "most effective" drug to prevent miscarriage.  See De Re Medica, pg. 211, App. 23.  The information contained in these publications was accepted by the medical community until DES was banned for use in pregnant women in 1971 by the FDA.  See Piver Statement, ¶ 7, App. 6.

Furthermore, while the 1969 and 1970 PDR do not directly reference the use of DES in pregnancy, such use is clearly contemplated by the language of the entry.  Lilly states in the 1969 and 1970 PDR that a "possible adverse reaction" on the fetus exists, so "the risk of estrogen therapy should be weighed against the possible benefits when diethylstilbestrol is considered for use in a known pregnancy."  1969 and 1970 PDR, App. 15 pg. 819-20 and App. 16 pg. 833.  The PDR entries further state that while "nausea" is a side effect, its incidence is less in pregnant women, implying that other side effects would be less severe.  Given the testimony of Plaintiffs' experts that the prescription of DES to pregnant women was a standard practice, a jury could assume that Lilly knew that DES continued to be used on pregnant women for the purpose of preventing miscarriage.

Furthermore, the "possible adverse reaction" warning in the PDR can be seen by a jury as inadequate.  In the same 1969 PDR that includes the warning for DES, Lilly's warning for the drug Haldrone states that "[p]regnancy is a relative contraindication to corticosteroid therapy, particularly during the first trimester, because of the observation of fetal abnormalities in experimental animals."  1969 PDR, pg. 824, App. 18.  Similar animal studies existed for DES and related drugs prior to plaintiff's gestation, See Enders, App. 4; Greene, App. 14, but no similar warning was given by Lilly.  Since Plaintiffs have presented evidence that DES had no

17

benefit for pregnant women, and significant harms for them, a jury could find that Lilly's <u>PDR</u> entry is an insufficient warning to a physician.

      E.    PLAINTIFFS' CLAIMS FOR NEGLIGENT MISREPRESENTATION, BREACH OF WARRANTY, AND STRICT LIABILITY ARE VIABLE

Defendant's arguments against Plaintiffs' claims of negligent misrepresentation and breach of warranty are essentially that Plaintiffs must prove exactly what Dr. Coleman read thirty-five years ago about DES. As stated above, Plaintiffs have established that a doctor following the standard of care in 1969-1970 would have prescribed DES based on Lilly's labeling. Defendant has presented no evidence that Dr. Coleman would have deviated from that standard.

Regarding strict liability, <u>Brown v. Superior Court</u>, 751 P.2d 470, 482-83 (Cal. 1988) holds that "a manufacturer is not strictly liable for injuries caused by a prescription drug so long as the drug was properly prepared and accompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution." Plaintiffs have provided evidence allowing a reasonable juror to find that Lilly knew or reasonably should have known about the dangers of DES when it was prescribed to Plaintiff Robin Hopper's mother, and those dangers would have precluded the sale of the drug.

Defendant's argument in opposition to the claim of strict liability is to refer to the lower court decision in <u>Motus</u>, which is inapplicable here. <u>Motus</u> included testimony from the prescribing physician that made it clear that the pharmaceutical manufacturer's warnings were not a factor in the prescribing physician's course of treatment. Defendant has provided no such evidence here, and Plaintiffs have provided evidence that it was the general practice of OB/GYNs to read Lilly's warnings.

F.    MR. HOPPER'S CLAIM IS VALID

Defendant's argument against the claim of Steven Hopper is that, as it is subsidiary to his wife's claim, it must fail if his wife's claim fails.  Plaintiffs do not dispute that a consortium claim's prerequisite is the claim of the spouse, but, as illustrated <u>supra</u>, Plaintiff Robin Hopper has put forth sufficient evidence that her claim cannot be dismissed.  Therefore, summary judgment is improper to Steven Hopper's claims.

IV.    **CONCLUSION**

Two California courts, applying California law, have found that the death of the prescribing physician is not a bar to a DES case.  A reasonable juror could find that Lilly played a major role in promoting DES.  Lilly has not produced any evidence that Dr. Coleman found DES by his own research or would have ignored warnings had there been any.  The word on Thalidomide got out very quickly.  Plaintiff Robin Hopper can still rely on strict liability and her contention that DES, like Thalidomide, should never have been on the market to pregnant women.

Defendant's only argument against Plaintiff Steven Hopper is that his wife's claims are insufficient.  As a reasonable juror could find for Robin Hopper, they could also find that Steven Hopper was injured through Defendant's actions.

WHEREFORE, Plaintiffs respectfully request that this Court deny Defendant Eli Lilly and Company's Motion for Summary Judgment.

Respectfully Submitted,


/s/ Aaron M. Levine
AARON M. LEVINE, #7864
AARON M. LEVINE & ASSOCIATES
1320 Nineteenth Street, N.W.
Suite 500
Washington, DC 20036
(202) 833-8040

Counsel for Plaintiffs