# Appendix 5

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
***************************
ROBIN HOPPER, et al.            *
                                *
         Plaintiffs,            *
                                *
    vs.                         *   Civil Action No. 05-CV-02346 (RBW/AK)
                                *
ELI LILLY AND COMPANY, et al.   *
                                *
         Defendants.            *
***************************
```

**DEFENDANT ELI LILLY AND COMPANY'S RESPONSES TO
PLAINTIFFS' FIRST SET OF INTERROGATORIES AND FIRST
REQUEST FOR PRODUCTION OF DOCUMENTS AND/OR TANGIBLE THINGS**

COMES NOW defendant Eli Lilly and Company (hereinafter "Lilly"), by and through its attorneys, Foley Hoag, LLP, pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, and provides the following responses to Plaintiffs' First Set of Interrogatories and First Request for Production of Documents and/or Tangible Things to Defendant Eli Lilly and Company.

**PRELIMINARY STATEMENT**

As a preface to each and every response to Plaintiffs' interrogatories and requests, Lilly qualifies its response by stating that Lilly has not completed its investigation of the facts relating to this case, has not completed its discovery in this action and has not completed its preparation for trial. Lilly reserves the right to amend or supplement these responses as discovery in the case progresses, as new facts are developed and as new information is obtained. Therefore, the following responses are given without prejudice to Lilly's right to produce any additional evidence at trial or in connection with any pretrial proceeding.

2051616v1

RESPONSE: Lilly objects to this interrogatory on the grounds that the phrase "years surrounding the exposure" is vague and undefined. Lilly further objects to disclosing a description of the diethylstilbestrol manufactured and distributed by Lilly on the grounds that this information is not necessary at this time for Plaintiffs' preparation for trial and would be unduly prejudicial to Lilly. Identification of the manufacturer through a physical description of the product used in the pregnancy is an issue presented in several other lawsuits. If the information requested is disclosed in this litigation, it will be disclosed for all practical purposes in all litigations, thereby depriving Lilly of any opportunity to test the recollection and veracity of persons suing to recover for injuries allegedly caused by diethylstilbestrol.

Lilly further objects to disclosing a description of the diethylstilbestrol manufactured and distributed by Lilly prior to deposing all fact witnesses who may have knowledge concerning the product allegedly ingested by Plaintiff Robin Hopper's mother. Lilly reserves the right to further object if those witnesses are unable to describe the product allegedly ingested by Plaintiff Robin Hopper's mother.

20.  Toxicity to a Developing Fetus

Identify, by author, publication and date, any controlled, double-blinded study performed between 1950 and the date of the exposure alleged in this case, that was designed to evaluate the toxicity of DES to a developing fetus exposed to DES in utero.

RESPONSE: Lilly incorporates herein its Objection D. Lilly further objects to this interrogatory to the extent it assumes as true facts at issue in this lawsuit. Lilly further objects to this interrogatory to the extent it seeks information which is more properly the subject of expert testimony. Lilly further objects to this interrogatory to the extent it requires Lilly, or any expert retained by Lilly, to collect, organize or analyze such studies, tests or investigations as

may exist in the public domain. Lilly further objects on the grounds that a human study which assumed that there was "toxicity of diethylstilbestrol (DES) to a developing fetus" would be unethical.

Without waiving and subject to its objections, Lilly states that although any study designed "to evaluate the toxicity of diethylstilbestrol (DES) to a developing fetus" would be unethical, Lilly was aware that independent physicians and scientific investigators tested, observed and reported upon the effects of the administration of diethylstilbestrol on the offspring of mothers who had taken the drug during pregnancy. At the time of publication, Lilly's medical monitors for diethylstilbestrol reviewed and evaluated the reports published in the scientific and medical literature by these investigators to determine if the use of diethylstilbestrol produced undesirable or adverse effects in the offspring. Some of these articles, while not designed specifically to meet the criteria in Interrogatory No. 20, nevertheless reported on the follow-up studies of human offspring exposed to diethylstilbestrol in utero:

Abarbanel, A. R.: Surg. Gynecol. Obstet., 73:257, 1941.

Canerio, E.M.; Houston, G.; Smith, C.A.: Am.J. Obstet. Gynecol., 65:1298, (June), 1953.

Gitman, L.; Kaplowitz, A.: New York J. Med., 50:2823 (December 1), 1950.

Karnaky, K. J.: South. Med. J., 35:838 (September), 1942.

Karnaky, K. J.: J. Clin. Endocrinol., 5:279 (July-August), 1945.

Karnaky, K. J.: Am. J. Obstet. Gynecol., 53:312 (February), 1947.

Karnaky, K. J.: Am. J. Obstet. Gynecol., 58:622 (September), 1949.

Karnaky, K. J.: Arizona Med., 8:36 (January), 1951.

Karnaky, K. J.: Med. Times, 81:315 (May), 1953.

2051616v1

Karnaky, K. J.: J. Ariz. Med. Assoc., 11:247 (July), 1954.

Nelson, H. B.; Gillespie, L.; White, P.: Obstet. Gynecol., 1:219 (February), 1953.

Palmer, L. J.: West J. Surg. Obstet. Gynecol., 56:175 (March), 1948.

Paolone, C. J.: J. Am. Med. Wom. Assoc., 4:240 (June), 1949.

Plate, W. P.: Int. Congr. Obstet. Gynec., p. 751, 1954.

Rosenblum, G: Transactions of the Conference on Sterility and Infertility of the American Society for the Study of Sterility, Vol. III, p. 131, 1947.

Rosenblum, G.; Melinkoff, E.: West. J. Surg. Obstet. Gynecol., 55:597 (November), 1947.

Smith, O. W.: Am. J. Obstet. Gynecol., 56:821 (November), 1948.

Smith, O. W.; Smith, G. V. S.: New Eng. J. Med., 214:562 (October 13), 1949.

Smith, O. W.; Smith, G. V. S.: Am. J. Obstet. Gynecol., 58:994 (November), 1949.

Smith, G. V. S.; Smith, O. W.: Obstet. Gynecol., 4(2):129 (August), 1954.

White, P.; Hunt, H.: J.A.M.A., 115:2039 (December 14), 1940.

White, P.; Hunt, H.: J. Clin. Endocrinol., 3:500 (September), 1943.

White, P.: J.A.M.A., 128:181 (May 19), 1945.

White, P.: Am. J. Med., 7:609 (November), 1949.

White, P.: The Treatment of Diabetes Mellitus, 9th Edition, Chapter 27, p. 676, Lea and Febiger (Philadelphia), 1952.

White, P.: Trans. New Eng. Obstet. Gynecol. Soc., 7:145, 1953.

White, P.; Kosky, P.; Duckers, J.: Med. Clin. North Am., 37:1481 (September), 1953.

White, P.; Gillespie, L.; Sexton, L.: Am. J. Obstet. Gynecol., 71(1):57 (January), 1956.

In addition to these studies, Lilly's product literature for diethylstilbestrol, which was also submitted and available to the Food and Drug Administration (FDA), referenced other articles regarding the use of diethylstilbestrol as an aid in the prevention of certain accidents of pregnancy.

During the period in which Lilly indicated diethylstilbestrol for use in pregnancy, neither Lilly nor, to the best of Lilly's knowledge, anyone else had received information that a serious or long term adverse effect on the human fetus was considered to be causally related to the use of diethylstilbestrol during pregnancy by the mother. Lilly further states that to the extent information responsive to this interrogatory may exist in the published medical and scientific literature, it is equally available to Plaintiffs as to Lilly.

21.    Laboratory Animal Studies

Between 1950 and 1968, did Lilly, or any laboratory under its control or direction, conduct any investigations designed to determine the effects of DES on the development of the reproductive tracts of fetuses of laboratory animals in utero? If so, identify the investigations, the dates when conducted, the researchers involved, and the outcomes.

RESPONSE: Lilly objects to this interrogatory to the extent it may assume that studies using pregnant animals are necessarily meaningful with respect to pregnant women, an assumption which Lilly disputes. Whether an animal is an appropriate model for testing the effects for a drug on a biological system depends on a variety of factors, including the physiologic similarity of the animal to the human. Without waiving and subject to its objection Lilly cannot state for certain if studies testing the effects of diethylstilbestrol in pregnant animals

were conducted by Lilly, or at the request of Lilly, prior to 1971. Lilly has made reasonable inquiry and diligently searched for records and has discovered that the information known or obtainable from records in existence is insufficient to enable it to determine if such tests were conducted.

22. <u>Research of Placental Permeability</u>

Attached hereto as Appendix No. 1 are selected pages from an article (Frank Moya, M.D. and Virginia Thorndike, M.D., *Passage of Drugs Across the Placenta*, 84 AM. J. OBSTETRICS & GYNECOLOGY 1778 (1962) which states, in part:

> The classic concept of the placenta as a simple, passive, semipermeable filter is no longer tenable in the light of present knowledge... It seems unlikely that a living cell membrane could be absolutely impermeable to a given compound. On the contrary, it is now believed that any substance found in the maternal or fetal blood should be able to penetrate the placenta to some extent unless it is destroyed or altered during passage... These new concepts demand a reappraisal of the available information regarding the passage of foreign compounds across the placenta, with special emphasis on the kinetics of penetration.

Identify by investigator, facility, date or subject, any research, investigation or other action taken by you or by anyone else on your behalf, after the publication of the above-cited article, to study the ability of diethylstilbestrol, in recommended pregnancy dosages, to penetrate the placental barrier, and its effect on the reproductive tract of the exposed forming fetus. Limit your answer to post-1962 investigations only.

<u>RESPONSE</u>: Lilly objects to this interrogatory to the extent it assumes facts at issue in this lawsuit. Lilly further objects to this interrogatory to the extent it seeks information based upon a quotation, taken out of context, from a medical article which speaks for itself and which is more properly the subject of expert testimony. Lilly further objects to this interrogatory

to the extent it requires Lilly, or any expert retained by Lilly, to collect, organize or analyze such studies, tests or investigations as may exist in the public domain.

Without waiving and subject to its objections, Lilly states that at all times it kept abreast of the published medical and scientific literature. By 1962, based on its review of the literature, Lilly assumed that diethylstilbestrol, like all estrogens, crossed the placenta. At the time Lilly was aware of an increasing body of literature questioning the effects on the fetus of all drugs taken by the mother during pregnancy. Although such literature suggested types of testing not previously considered by the medical or scientific community, it also questioned the relevancy of such testing in light of human experience. Lilly further states that by 1962 diethylstilbestrol had been approved for use in pregnancy for almost fifteen years and had been recognized as safe by experts and health care practitioners for over twenty years. Investigators studying the effectiveness of diethylstilbestrol for use in pregnancy, concurred with those experts as to its safety.

Further answering, Lilly states that it was aware that independent physicians and scientific investigators had tested, observed and reported upon any observed effects of the administration of diethylstilbestrol on the offspring of mothers who had taken the drug during pregnancy. Lilly's medical monitors had reviewed and evaluated reports published in the scientific and medical literature by these investigators to determine if the use of diethylstilbestrol produced undesirable or adverse effects in the offspring. Lilly has previously furnished a list of such articles to Plaintiffs' counsel. Because neither Lilly, nor to the best of Lilly's knowledge, anyone else had received information that a serious or long term adverse effect on the human fetus was considered to be causally related to the use of diethylstilbestrol during pregnancy by the mother, Lilly, to the best of its knowledge, conducted no additional studies concerning the

ability of diethylstilbestrol to cross the placental barrier, or any subsequent effects on the fetus, during the time period in which diethylstilbestrol was approved for use in pregnancy. Lilly further states that to the extent information responsive to this interrogatory may exist in the published medical and scientific literature, it is equally available to Plaintiffs as to Lilly.

### REQUEST FOR PRODUCTION OF DOCUMENTS AND/OR TANGIBLE THINGS

1. Produce copies of all labeling, promotional, educational and other informational publications designed to inform and/or acquaint and/or educate a physician in the in the late 1960's with the indications, actions, benefits, warnings, and/or side effects of your DES in dosages used for the prevention of the accidents of pregnancy.

RESPONSE: Lilly states that it had no program for promoting diethylstilbestrol for use in pregnancy. All representations and recommendations which Lilly offered concerning diethylstilbestrol, including information on indications, actions, benefits, warnings, and/or side effects were contained in the product literature for diethylstilbestrol which accurately reflected the state of medical knowledge at the time of its preparation. Further answering, Lilly states that it will make documents responsive to this request available to Plaintiffs' counsel for inspection and copying at a mutually agreed upon time.

2. Copies of all distributing and selling service agreements in existence during the years 1967-1971, inclusive, between you and any jobber or wholesaler in the area of the alleged city of exposure, similar to that attached hereto as Appendix No. 2.

RESPONSE: Lilly objects to this request to the extent that it may assume that only Lilly's products were supplied on an unspecified order, which is at issue in this lawsuit. Lilly further objects to this request on the grounds that information concerning any wholesaler

- 25 -

2051616v1

By: _____
Deputy General Counsel
Michael J. Harrington

STATE OF INDIANA    )
                    : ss.:
COUNTY OF MARION    )

On this 24th day of July, 2006, before me appeared Michael J. Harrington, Deputy General Counsel, Eli Lilly and Company, who stated that he signed the above Responses to Plaintiffs' First Set of Interrogatories and First Request for Production of Documents and/or Tangible Things to Defendant Eli Lilly and Company but that many of the facts set forth in such Responses are not within his personal knowledge, having been assembled and compiled by others within the employ of Eli Lilly and Company at his direction, as to which facts he is informed and believes the same to be true and that the remaining facts are known by him to be true.

Subscribed and sworn to before me this 24th day of July, 2006.

_____
Notary Public
Karen L. Smith
Morgan County, IN
February 7, 2010