Appendix 22

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOY KASPARIAN and RICHARD
FEDERICO, JR.,

        Plaintiffs

    v.

ELI LILLY AND COMPANY, et al.,

        Defendants.

CIVIL ACTION No. 06-CV-00290 (RMC)

**DEFENDANT ELI LILLY AND COMPANY'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**I.   Introduction**

Defendant Eli Lilly and Company ("Lilly") submits this Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment on all claims asserted by Joy Kasparian ("Ms. Kasparian") and Richard Federico ("Mr. Federico") (collectively "Plaintiffs"). Each of the claims asserted - negligence, strict liability, breach of warranty, negligent misrepresentation - rest in the end on the alleged inadequacy of Lilly's written product literature and warnings. Each claim asserts that those written materials were read and relied upon by the prescribing doctor - the learned intermediary - and that the doctor would not have prescribed the drug had better written materials been supplied. The crux of the claims, then, is that the only wrong alleged by Lilly is inadequate product literature leading to a prescription for diethylstilbestrol.

Yet Plaintiffs cannot show that the prescribing doctor saw or relied on Lilly's product literature. The pharmaceutical at issue here had been on the market for more than twenty years when it was prescribed in this case. It was never patented, and literally hundreds of companies

were used by Dr. Horne, Plaintiff cannot show that (1) Lilly failed to adequately warn Dr. Horne, (2) that but for Lilly's warning, Dr. Horne would not have prescribed diethylstilbestrol, or (3) that any warning by Lilly - adequate or not - would have changed Dr. Horne's prescription practices. Lilly's warnings are not the "but for" cause - the specific, proximate cause - for the injury here without proof that Lilly's warnings even factored into Dr. Horne's prescription and treatment decisions.

Plaintiff cannot present such proof because Lilly's product literature during the time of Plaintiff's mother's pregnancy did not indicate the use of diethylstilbestrol to prevent miscarriage and advised the physician to weigh the risks and benefits before using diethylstilbestrol in a known pregnancy. *See* Lilly's diethylstilbestrol product literature from September 1969 and June 1971 (Snyder Aff., Ex. 8); 1969 and 1970 entries for Lilly's diethylstilbestrol in the Physician's Desk Reference (Snyder Aff., Ex. 9). While the use of diethylstilbestrol in pregnancy was then approved by the FDA, Lilly was not suggesting its use in 1969-70. While it would have been perfectly acceptable for Dr. Horne to write prescriptions for uses that are not listed on Lilly's product labeling, there is no basis to conclude that Dr. Horne looked at Lilly's literature and relied on it. Indeed, circumstantial evidence suggests that Dr. Horne did not follow Lilly's literature during the relevant time period since he prescribed diethylstilbestrol for a use not set out by the product literature.

In light of this, it is speculation - not proof - to simply presume that Dr. Horne must have read Lilly's warnings. This causal element is one that Plaintiff must prove, and this is a burden she has failed to meet.[6]

---

[6] In *Hibbs v. Abbott Lab.*, 814 P.2d 1186 (Wash. Ct. App. 1991), the Court of Appeals of Washington refused to grant summary judgment for lack of causation where the prescribing doctor relied on his own knowledge and not the drug company's literature in prescribing DES. This case is distinguishable from that at hand because Massachusetts and Washington apply different standards in product liability actions. Washington

B3305721.3                                    - 13 -

> **4. Plaintiffs' Negligent Misrepresentation Claim Must Be Dismissed Because Plaintiffs Cannot Meet Their Burden of Proving That Dr. Horne Detrimentally Relied on Statements Specifically Made By Lilly**

To succeed on a claim of negligent misrepresentation against a manufacturer, a plaintiff bears the burden of proving that the defendant: (1) in the course of its business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) *by their justifiable reliance upon the information*, and (6) that it failed to exercise reasonable care or competence in obtaining or communicating the information. *Cummings v. HPG Int'l Inc.*, 244 F. 3d 16, 24 (1st Cir. 2001) (emphasis added) (applying Massachusetts law).

Just as in the claim of inadequate warning, Plaintiff's claim is based on alleged faults in Lilly's writings. Those writings, directed to prescribing doctors, cannot have caused any harm unless the prescribing doctor saw and relied on them. Plaintiff has produced no evidence that Dr. Horne ever saw, much less relied on, Lilly's product literature. Because Plaintiff cannot prove that Dr. Horne read and detrimentally relied on warnings provided by Lilly, summary judgment is warranted in Lilly's favor on Plaintiff's claim for negligent misrepresentation.

> **5. Plaintiffs' Claims For Breach of Warranty Must Be Dismissed Because Plaintiffs Cannot Prove That Any Warranty By Lilly Was Read or Relied on By Dr. Horne.**



---

has adopted market share liability, allowing a plaintiff to hold liable any and every drug company that sold the drug in the relevant time period regardless of whether the specific defendant's drug caused the plaintiff's harm. *See Hibbs*, 814 P.2d at 1187 (citing *Martin v. Abbot Lab.*, 689 P.2d 368 (Wash. 1984)). It follows that Washington, in a market share case, could not require proof that a manufacturer's warnings were read and relied upon as there is no requirement to prove that the defendant's product was involved in the case at all. Instead, the market share standard for liability relaxes traditional causation principles that require a plaintiff to prove that the defendant was the cause in fact and the proximate cause of her injuries. Unlike Washington, Massachusetts has not relaxed the causation standard in this fashion and has not adopted the market share theory of liability. *See Payton v. Abbott Labs.*, 437 N.E.2d 171, 188-190 (Mass. 1982) (finding plaintiff's theory of market share liability in a DES case did not satisfy the longstanding prerequisite in a negligence action of identifying the tortfeasor. Identification serves two important purposes: "it separates wrongdoers from innocent actors, and also ensures that wrongdoers are held liable only for the harm that they have caused").