IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBIN HOPPER and STEVEN HOPPER,

    Plaintiffs,

v.

ELI LILLY AND COMPANY,

    Defendant.

CIVIL ACTION No. 05-CV-02346 (RBW/AK)

**DEFENDANT ELI LILLY AND COMPANY'S
REPLY BRIEF IN SUPPORT OF SUMMARY JUDGMENT**

In their Memorandum in Support of Opposition to Defendant Lilly's Motion for Summary Judgment ("Plaintiffs' Opposition" or "Pls. Opp.") plaintiffs have filed a large volume of materials in the apparent hope that the Court will conclude that there must be some relevant disputed fact hidden in the pile. Only one fact is at issue in this motion: Did Dr. George Coleman, rely on the product literature of Eli Lilly and Company ("Lilly") when he allegedly prescribed DES to Mrs. Hopper's mother in 1969 and 1970? If Dr. Coleman relied on his own training and experience, or on the literature of the other companies that made DES in 1969 and 1970, Lilly's allegedly inadequate literature is simply irrelevant to this case.

Plaintiffs make essentially two arguments in their Opposition. First, through Dr. Julius Piver, a physician based in Washington, D.C., plaintiffs assert that "it was the custom and usual practice of OB/GYN's in major population centers in the US in 1970 to read, rely upon, and heed the Lilly literature." Dr. Piver's testimony in this regard must be excluded as irrelevant and speculative under Fed. R. Civ. P. 56(e).[1] The only OB/GYN whose custom and practice of prescribing DES is relevant to this case is Dr. Coleman of whom Dr. Piver has no personal

---

[1] Lilly has filed a Motion to Strike Dr. Piver's testimony. Docket No. 41.

knowledge whatsoever.  Further, the assertion that Dr. Piver can speak to the routine practices of all OB/GYNs in the United States is unsupported and far fetched.  Any knowledge Dr. Piver gained from collegial conversations with other OB/GYNs at conferences an symposia in Washington, D.C. does not begin to approximate actual knowledge of the routine practices of all OB/GYNs in the United States.  For these reasons, and because he was never disclosed as an expert or made available to have his views tested by deposition, Dr. Piver's testimony must be excluded.

Second, plaintiffs argue that any gaps in their causation evidence left by Dr. Piver can be filled by California's "heeding presumption."  In fact, as will be shown below, there is no such thing as a "heeding presumption" in California law.  While plaintiffs are correct that two California courts have denied summary judgment motions premised on the "reliance" defense presented here, there are significant differences between those two cases and this one that compel a different result.  To the extent those two decisions implicitly rely on the magic of a "heeding presumption" they are inconsistent with California law.

Finally, plaintiffs cursory argument that California's market share liability has a relaxing effect on their causation burden is unavailing.  California market share liability simply does not apply in this case as plaintiffs claim that it was Lilly's DES that caused Mrs. Hopper's injuries.  For all these reasons, Lilly's motion for summary judgment should be granted.

    **A.**    **Dr. Piver's Testimony Should be Excluded as Incompetent Under Rule 56(e) and Untimely Under Local Rule 26.2(a)**

Plaintiffs offer the testimony of Dr. Piver to establish that Dr. Coleman would have prescribed DES to Mrs. Hopper's mother based on Lilly's pre-1969-'70 literature as well as what he believes was the general standard of obstetric care in the late 1960's and early 1970's.  *See* Statement of Dr. Julius S. Piver ("Piver Statement"), Docket No. 40, App. 6.  Plaintiffs cannot

meet their reliance burden with Dr. Piver's testimony. Courts applying California law have consistently required plaintiffs to establish *specific* reliance on a manufacturer's literature by the *relevant* prescribing physician. *See e.g. Motus v. Pfizer, Inc.* 196 F.Supp.2d 984, 995 (C.D. Cal. 2001) (granting summary judgment because plaintiff could not establish that *Dr. Trostler* relied on defendant's product literature); *Huntman v. Danek Medical, Inc.*, 1998 U.S. Dist. LEXIS 13431, at *19 (S.D. Cal. 1998) (granting summary judgment for medical device manufacturer because plaintiff could not establish that *Dr. Thompson* relied on defendant's alleged misrepresentations); *Plummer*, 819 F.2d at 358-59 (reversing verdict for plaintiff because the evidence showed that *Dr. Cohen* had a practice of failing to convey manufacturer literature to his patients).

Dr. Piver sheds no light on *Dr. Coleman's* specific practice with respect to reading and heeding manufacturer literature when prescribing drugs for his patients.[2] As such, Dr. Piver's testimony is completely irrelevant to this case and cannot be used to assist plaintiffs in meeting their reliance burden. Further, Dr. Piver has no basis in personal knowledge for claiming that Dr. Coleman would have followed what Dr. Piver describes as the standard of obstetric care with respect to the prescription of DES in 1969 and 1970.[3] Without more information about Dr.

---

[2] Dr. Piver's testimony does support Lilly's argument that Dr. Coleman could have prescribed DES on the basis of information gleaned from a variety of sources *other than* Lilly's product literature. Dr. Piver states that he gained his familiarity with the literature and labeling of DES "from exchanging information regarding the care and treatment of OB/GYN patients with other physicians at conferences, meetings, seminars, and symposiums attended by OB/GYNs from all over America." Piver Statement, Docket No. 40, App. 6, ¶ 3. Dr. Coleman may or may not have obtained similar information from such events. There is no basis to simply presume that Dr. Coleman attended the same events as Dr. Piver and absorbed Dr. Piver's penchant for following Lilly's literature as to DES, *except* for when Lilly had no indication for use of DES in pregnancy. As Lilly has not had the opportunity to depose Dr. Piver, there is no way to tell the extent to which the information gained from these events was based on Lilly's product literature.

[3] Neither plaintiffs' nor Dr. Piver have adduced sufficient evidence about Dr. Coleman's custom and practice to claim it was his "habit," as defined by Fed. R. Evid. 406, to follow Lilly's literature. Establishing habit under Rule 406 is extremely difficult. In *Weil v. Seltzer*, 873 F.2d 1453, 1460-61 (D.C. Cir. 1989), this Court noted that habit and routine practice refers to activities so consistent as to be nonvolitional, occurring with invariable regularity. The *Weil* Court held that five patient reports about a doctor's custom and practice were not enough to prove such an

Coleman's specific DES prescription practices, Dr. Piver's testimony constitutes rank speculation that should be excluded from consideration on summary judgment. *See* Fed. R. Civ. P. 56(e); *Alyeska Pipeline Serv. Co. v. U.S. EPA*, 856 F.2d 309, 314 (D.C. Cir. 1988) (holding that an affidavit that fails to identify reliable sources of personal knowledge is nothing more than speculation and cannot satisfy Rule 56(e)); *see also Rogers Corp. v. EPA*, 275 F.3d 1096, 1103 (D.C. Cir. 2002) (stating that favorable inferences can only be drawn from a non-movant's evidence when it is based on more than mere speculation); *Judicial Watch v. United States DOC*, 2004 U.S. Dist. LEXIS 19648 at 6-8 (D.D.C. 2004) (striking a statement based on opinion rather than personal knowledge pursuant to Fed. R. Civ. P. 56(e) (citation omitted).

Finally, Dr. Piver's testimony should be excluded as untimely under the Local Rules of this Court. Local Rule 26.2(a) provides:

> A party that without substantial justification fails to disclose information required by this rule or by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Dr. Piver's testimony was disclosed for the first time in Plaintiffs' Opposition. Plaintiffs offer no justification for their failure to disclose Dr. Piver prior to the close of discovery in this case. Indeed, it appears that plaintiffs' counsel has had Dr. Piver's statement in their possession since February 1, 2006. *See* Piver Statement, Docket No. 40, App. 6, at 3 (dating the statement February 1, 2006). Plaintiffs cannot claim that they could not anticipate the grounds for Lilly's Motion for Summary Judgment prior to the close of discovery as their counsel has litigated hundreds of DES cases in numerous jurisdictions for many years. Plaintiffs' failure to disclose Dr. Piver's testimony has deprived Lilly of the opportunity to depose this witness on the basis of

---

invariable pattern as to all patients. *Id.* at 1461. Plaintiffs have not even produced *one* such report with respect to Dr. Coleman.

his description of the standard of care for obstetric patients in 1969 and 1970 as well as the basis of his knowledge, if any, of Dr. Coleman's particular standard of care for the prescription of DES.

### B. Plaintiffs' Cited Authority Does Not Support Their Claim That the Heeding Presumption Exists in California

To support their claim that the heeding presumption exists in California, plaintiffs first focus on the Second Circuit's decision in *Plummer v. Lederle Labs., Div. of Am. Cyanamid Co.* because the Court began its analysis by stating "[o]nce [a] warning is given, there is a presumption it will be heeded." 819 F.2d 349, 355-56 (2d Cir. 1987). This statement by the Second Circuit was clearly attributed to the Restatement (Second) of Torts, § 402A comment j, *not* to any authority in California law. *Plummer*, 819 F.2d at 355-56. There is nothing in the *Plummer* decision indicating that California has adopted § 402A comment j. Moreover, in its application of California law, the Second Circuit did not afford the plaintiff in *Plummer* the benefit of the heeding presumption; the Court focused instead on plaintiff's failure to prove that the prescribing physician conveyed defendant's literature to plaintiff's parents when prescribing defendant's product. *Plummer*, 819 F.2d at 359.

Plaintiffs next cite two California DES cases where Lilly's motions for summary judgment premised on plaintiff's failure to prove reliance were denied. Pls. Opp., at 10-11. There are important factual differences between *Hansch v. Eli Lilly and Co.*, No. 04-CV-00122 (N.D. Cal. 2005) and *Miskulin v. Abbott Labs*, No. 418517 (Cal Sup. Ct. Oct. 25, 2005) and the case *sub judice*. The plaintiffs in *Hansch* and *Miskulin* were born in 1960 and 1964 respectively. *See* Plaintiff Susan Lynn Hansch's Responses to Defendants' Amended Uniform Preliminary Requests for Information ("*Hansch* Interrogs."), at No. 1 (excerpt attached hereto as Ex. 1); Complaint for Damages, filed in *Miskulin v. Abbott Labs., et al.*, No. 03-CV-418517 ("*Miskulin*

Complaint"), at ¶ 22 (excerpt attached hereto as Ex. 2).  In 1960 and 1964, Lilly's product literature for DES were significantly different than they were in 1969 and 1970.  In particular, in 1960 and 1964, Lilly's literature included an indication for use during pregnancy.  *See* 1960 and 1964 entries for Lilly's DES in the Physician's Desk Reference (copies attached hereto as Ex. 3).  This indication for use during pregnancy was removed from Lilly's literature in 1969 and 1970.  *See* Docket No. 38, Ex. 10.

The change in Lilly's literature in 1969 and 1970 is significant.  In *Hansch* and *Miskulin*, Lilly's motions for summary judgment were premised solely on the fact that plaintiffs could not produce any evidence that the prescribing physicians relied on its literature.  The prescribing physicians in those cases were deceased and there was no testimony from anyone familiar with their prescription practices who could offer affirmative evidence of reliance.  Plaintiffs in this case face the same absence of affirmative evidence on reliance.  Here, however, Lilly can point to the fact that Dr. Coleman's prescription of DES during pregnancy, while not improper, was inconsistent with Lilly's product literature.  The fact that Lilly's 1969 and 1970 literature did not indicate use of DES during pregnancy combined with the fact that Dr. Coleman prescribed DES to Ms. Hopper's mother despite the change, suggests strongly that Dr. Coleman was not relying on Lilly's literature.  For these reasons, *Hansch* and *Miskulin* are distinguishable and do not control the result in this case.

### C. Plaintiffs' Causation Burden in This Case is Not Relaxed By California's Market Share Liability

Plaintiffs argue at the outset of their Opposition that the need to forge a causal link between Lilly's allegedly defective literature, Dr. Coleman's reliance on those literature and Mrs. Hopper's alleged injuries is relaxed in market share jurisdictions like California and Washington.  *See* Plaintiffs' Memorandum in Support of Its Opposition to Defendant Lilly's

Motion for Summary Judgment ("Plaintiffs' Opposition" or "Pls. Opp."), at 1.  As support for this argument, plaintiffs cite the fact that Lilly recognized in another DES case the logic of relaxing a plaintiff's reliance burden in market share jurisdictions.  *Id.*  None of this, however, has anything to do with plaintiffs' causation burden *in this case*.

Here, plaintiffs have chosen to forgo the benefit of California's market share liability on the strength of the testimony of Mrs. Hopper's mother, who identified Lilly as the manufacturer of the DES she allegedly ingested.  *See* Pls. Opp., at 5.  In accordance with this strategic decision, plaintiffs' have dismissed all of the other DES manufacturers that were originally named as co-defendants.  *See* Docket No. 38, Ex. 1, at 1 (naming five other manufacturers as defendants).  As a result, plaintiffs are charged under traditional California tort principles with the standard causation burden in product liability cases, *to wit*, "plaintiff[s] must prove that the defective products supplied by the defendant were a substantial factor in bringing about his or her injury.  *Rutherford v. Owens-Illinois, Inc.*, 941 P.2d 1203, 1214 (Cal. 1997).  In the context of a prescription drug failure to warn case, plaintiffs must prove that the prescribing physician's reliance on defendant's allegedly defective literature proximately caused the alleged injuries. *See Motus v. Pfizer Inc.*, 358 F.3d 659, 661 (9th Cir. 2004) (affirming summary judgment for defendant where the evidence showed that defendant's literature did not factor into the prescribing physician's decision to prescribe defendant's product).  By rejecting market share liability in this case, plaintiffs' have accepted the burden of affirmatively proving that Dr. Coleman relied on Lilly's literature when he prescribed DES to Mrs. Hopper's mother.

## CONCLUSION

For all the foregoing reasons, and for those set out in Lilly's Memorandum of Points and Authorities, Lilly respectfully requests that its Motion for Summary Judgment be GRANTED.

## **REQUEST FOR HEARING**

Pursuant to LCvR 7.1(f), Lilly requests a hearing on its Motion for Summary Judgment.

                          Respectfully submitted,

                          ELI LILLY AND COMPANY

                          /s/ James J. Dillon
                          James J. Dillon
                          D.C. Bar No. 485593
                          Foley Hoag LLP
                          155 Seaport Boulevard
                          World Trade Center West
                          Boston, MA 02210-2600
                          (617) 832-1000

Dated: February 2, 2005