UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)
ROBIN HOPPER and STEVEN HOPPER   )
                                 )
            Plaintiffs,          ) CIVIL ACTION No. 05-CV-02346 (RBW/AK)
      v.                         ) NEXT EVENT:
                                 )   Pretrial Conference May 7, 2007 at 9:30AM
ELI LILLY AND COMPANY,           )
                                 )
            Defendant.           )
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)

### PLAINTIFFS' OPPOSITION TO DEFENDANT ELI LILLY AND COMPANY'S MOTIONS TO STRIKE TESTIMONY OF JOHN J. HEFFERREN, Ph.D. AND JULIUS S. PIVER, M.D.

COME NOW Plaintiffs Robin and Steven Hopper (collectively "Plaintiffs"), through counsel, and oppose Defendant Eli Lilly and Company's ("Lilly's") Motions to Strike Testimony of John J. Hefferren, Ph.D., and Julius S. Piver, M.D., and as grounds therefore states:

**1.   Dr. Hefferen is Known to Defendant**

Dr. Hefferren's statement does not surprise or prejudice Defendant. Lilly introduced Dr. Hefferren into DES litigation over a year ago as their expert and Defendant has relied on Dr. Hefferren's work on drug identification in prior DES cases. Furthermore, Dr. Hefferren's conclusion and methodology have been at issue in prior cases.

Defendant has repeatedly relied on Dr. Hefferren's 1962 article to counter identification claims in the past. See, e.g., Selections from Lilly's Motions for Summary Judgment in Cutone v. Eli Lilly and Co., Civil Action No. 04-CV-12725 (D. Mass. 2006), Delaney v. Eli Lilly and Co., Civil Action No. 05-CV-10241 (D. Mass. 2006), Tait v. Eli Lilly and Co., C.A. No. 05-cv-2082 (S.D. Tex. 2006), Exhibits A-C of App. 1.[1]  Defendant has continuously relied on Dr.

---

[1] Although the Memoranda use different citation forms, and occasionally misspell Dr. Hefferren's name as "Hefferon," the attached exhibits to each memorandum are the same *Journal of the American Medical Association* article that Defendant now finds so objectionable.

1

Hefferren's 1962 article to attack identification claims dating from 1969, such as in <u>Cutone</u> (1969-1970), Delaney (1969-1970) and <u>Tait</u> (1968-1969).

Furthermore, Defendant has been aware of Dr. Hefferren's conclusions since November of 2006 when they were presented to rebut Defendant's citation of Dr. Hefferen's article in <u>Tait v. Eli Lilly and Co.</u>, <u>supra</u>.  <u>See</u> Selection from Opposition to Summary Judgment in <u>Tait v. Eli Lilly and Co.</u>, App. 2.  Defendant has no excuse to find Dr. Hefferen's claims now new and surprising when they have already been litigated.

When a court considers a motion to strike, its focus is primarily on the surprise and prejudice suffered by the other party.  <u>See</u> <u>Michelone v. Desmarais</u>, 25 Fed. Appx. 155, 158 (4th Cir. 2002).  Here, there is no surprise or prejudice to Defendant; Defendant is well aware of Dr. Hefferren and his conclusions.

**2.      Dr. Piver is Known to Defendant**

Defendant is even more familiar with the statements of Dr. Piver than Dr. Hefferren.  Dr. Piver's conclusions regarding the standard of care have been known to defendant for years.  In <u>Miskulin v. Abbott Lab's</u>, No. CGC-03-418517 (Cal. Super. 2005), Dr. Piver was cited for the standard of care of doctors in California.  <u>See</u> Selection from Opposition to Eli Lilly's Motion for Summary Judgment in <u>Miskulin</u>, App. 3.  Furthermore, Dr. Piver was recently deposed by Defendant in <u>Deep v. Eli Lilly and Co.</u>, Civil Action No. 1:06-CV-00111 (D.D.C.), where Defendant's counsel questioned Dr. Piver about his opinions on his knowledge of the standard of care regarding DES.  <u>See</u>, <u>e.g.</u>, Deposition of Julius S. Piver, M.D., pgs. 61-64, App. 4.

**3.      Dr. Hefferren's Statement is Relevant as Defendant Put Exposure and Identification In Issue In Its Statement of Undisputed Facts**

Defendant says that it does not contest identification at summary judgment.  Def. Motion to Strike Testimony of John J. Hefferren, pg. 1-2.  However, in Statement No. 6 of its Statement

of Undisputed Facts, Defendant alleges that Plaintiffs have not adduced any evidence demonstrating that Dr. Coleman prescribed Lilly's brand of diethylstilbestrol ("DES") or "that Dr. Coleman prescribed Ms. Hannah [Fayola Hannah, Plaintiff Robin Hopper's mother] DES at all." Def. Mem. in Support of Its Motion for Summary Judgment, pg. 4.

Since Defendant alleges in Statement No. 5, and Plaintiffs do not dispute, that "DES was a prescription drug, available for use only by prescription from a licensed physician," Def. Mem., pg. 4, Defendant's allegation that Dr. Coleman did not prescribe DES does not go to Defendant's heeding argument. Instead, it appears to be an effort to, through the use of the Statement of Facts, cast doubt on other elements of proof that Defendant does not wish to argue at length in summary judgment. The inference is that, if DES was available only by prescription and Dr. Coleman did not prescribe DES, DES was not prescribed.

To counter the negative inference created by Defendant regarding Plaintiffs' exposure evidence, Plaintiffs set forth the testimony of Ms. Hannah regarding the pill she took, showing that it corroborated, not only with exposure to DES, but exposure to Defendant's brand of DES. Dr. Hefferren's testimony is, in this regard, to show that Ms. Hannah took DES and not some other, similar-looking drug.

As Defendant not only questioned whether DES was prescribed to Ms. Hannah, but whether the prescriptions had a specific manufacturer, Plaintiffs believed that this statement was also a sideways attack on Plaintiffs' identification evidence. To that end, the statement of Dr. Hefferren is directly on point.

**4. Dr. Piver's Testimony is Relevant as It Supports the Proposition that Dr. Coleman Acted as a Reasonable Physician**

Dr. Piver's statement is relevant in that it supports Plaintiffs' proposition that Dr. Coleman conformed to the standard of care. As stated in Plaintiffs' Opposition to Summary

3

Judgment, California law regarding medical malpractice states that "[n]egligence on the part of a physician or surgeon will not be presumed; it must be affirmatively proved." Zavala v. Board of Trustees, 20 Cal. Rptr. 2d 768, 773 (Cal. Ct. App. 1993) (citing Huffman v. Lindquist 234 P.2d 34 [1951]). California doctors, therefore, are presumed to follow the appropriate standard of care in their practice, such as in prescribing drugs.

Dr. Piver establishes that the standard of practice for an obstetrician was to prescribe DES and rely on Lilly's materials in doing so. Dr. Piver also establishes that doctors would have kept current on the literature and read any warning given. Under California law, if Lilly wishes to show that Dr. Coleman performed otherwise, it must provide other testimony as to the standard practice of obstetricians in 1969-1970 or show that Dr. Coleman did not follow that standard of care.

Defendant's argument that Plaintiffs must show particularly what Dr. Coleman's knowledge was is an attempt to collaterally litigate its Motion for Summary Judgment. Separate from the issue of the heeding presumption, Dr. Piver may testify as to what the standard of care was, as California law presumes that doctors follow the standard of care.

**5.     Defendant's Authorities Regarding the Sufficiency of Affidavits are Irrelevant and Misleading**

Lilly also attacks Dr. Piver's statement as speculative, citing Alyeska Pipeline Serv. Co. v. E.P.A., 856 F.2d 309 (D.C. Cir. 1988), Rogers Corp. v. E.P.A., 275 F.3d 1096 (D.C. Cir. 2002); and Judicial Watch v. United States Dep't of Commerce, 224 F.R.D. 261 (D.D.C. 2004). These cases are irrelevant and present facts and situations so far removed from the present litigation as to imply inclusion in Defendant's motion without being read in full.

Alyeska Pipeline is a case where a polluter attempted to discover the scope of the EPA investigation against it by filing a Freedom of Information Act request. To counter the EPA's

4

defense that the investigation was still ongoing, the polluter had an employee sign an affidavit stating that the EPA's course of investigation was clear from the inquiries it had already made. Alyeska Pipeline, 856 F.2d at 314. The court held that one cannot determine the course of an investigation from the known acts of the investigators. Id. Aleyska Pipeline sheds no light on the sufficiency of medical standard of care evidence.

Judicial Watch is another FOIA case. In Judicial Watch, a nonprofit submitted as evidence to compel more disclosure from a government agency a statement from a former employee of that agency. The former employee's sole basis for some of her statements were the notes of another person. 224 F.R.D. at 264. Furthermore, the former employee confessed at deposition that she did not know the official procedure for document handling that she claimed was violated. Id. at 265. Dr. Piver provided his *curriculum vitae* and set forth his knowledge of the obstetric standard of care. There is no question that he has personal knowledge of what he will testify about, which is the national standard of care in obstetrics.

Rogers Corp., an EPA enforcement case, has no relevance to the present case whatsoever. Rogers Corp. is a dispute as to the origin of PCB contamination in a concrete structure. The EPA contended it is from industrial activity; the company contended it was from chemicals leaching up from the already contaminated soil. The EPA used a *res ipsa loquitor* argument as to the pollution – since the levels of PCBs were higher, there must have been a discharge. 275 F.3d at 1004. The cited language in Defendant's motion from pg. 1103 is a restatement of the Supreme Court's summary judgment cases, and provides no further relevance to this case. The Rogers Corp. court's final determination that the various physical evidence raised a question of fact as to how the PCB concentrations increased, id. at 1104-5, does not establish what information would be defeat summary judgment in a pharmaceutical failure-to-

warn case such as the one at present, much less shine any light on whether or not Dr. Piver's statement is sufficient.

Lilly attempts to confuse the issue by stating that Dr. Piver's standard of care testimony – which he is qualified to give – requires personal knowledge of Dr. Coleman. Plaintiffs have already established infra that California law allows one to presume the actions of a doctor were in conformance with the standard of care barring evidence to the contrary. Therefore, personal knowledge of Dr. Coleman is not required.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that Defendant's Motions to Strike be Denied.

                                          Respectfully submitted,

                                          AARON M. LEVINE AND ASSOCIATES

                                          /s/ Aaron M. Levine
                                        Aaron M. Levine, #7864
                                        1320 Nineteenth Street, N.W., Suite 500
                                        Washington, D.C. 20036
                                        (202) 833-8040

                                        COUNSEL FOR PLAINTIFFS