# Appendix 2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
Houston Division

MICHELLE TAIT and
STEVEN TAIT,

            Plaintiffs,

v.                                           CIVIL ACTION No. 05-CV-2082

ELI LILLY AND COMPANY,

            Defendant.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF OPPOSITION
TO DEFENDANT ELI LILLY'S MOTION FOR SUMMARY JUDGMENT**

recollection of the unique identifying features of the Lilly DES tablet; 2) the prevalence and popularity of Lilly's brand of DES; 3) the exclusivity of Lilly's DES at the drug store chain where the mother brought the drug; 4) the monopolistic domination of the market by Lilly and then supply system; and 5) Lilly's own identification witness who indicts Lilly.

At trial, Plaintiffs are entitled to a presumption that had Lilly warned or tested DES, the drug would either not have been on the market or it would have carried a warning which would have been heeded by Ms. Tait's prescribing OB/GYN or her mother who would never had taken a drug if it had any risk of serious injury to her child and that the then existing standard of care compelled a physician to seek current information on the therapies he/she used.

## II. PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS

### Plaintiffs' Controverted Material Facts

1-7. Admitted.

8. Denied. Mrs. Steffen does know and has described the Lilly tablet as small, round white cross-scored without imprint, thereby identifying a tablet which has been confirmed as DES made by Eli Lilly uniquely. See Statement of Lilly's expert, John J. Hefferren, dated, November 10, 2006, ("Hefferren Statement"), Ex. 5 and Photograph of the Diethylstilbestrol bottle and pills manufactured by Eli Lilly and Company ("Lilly's DES Photo"), Ex. 6.

9. Admitted.

10. Denied. Plaintiff, although a fetus in utero at the time of exposure, herein presents proof that Lilly's product is the culprit from the physical description, Lilly's

3

regional manager, a neighborhood pharmacist and Lilly's own expert. See Statement of Philip J. Cafferty, dated ("Cafferty Statement"), Ex. 7; Statement of Felipe G. Salinas, dated October 21, 2004 ("Salinas Statement"), Ex. 8; and Hefferren Statement, Ex. 5.

11. Admitted.

12. Denied. The companies listed in the Red and Blue Book, in fact, were not national manufacturers, but were generic, local repackagers and bottlers. See Statement of Harold B. Sparr, R.Ph., D.PH, M.S., dated September 20, 2006 ("Sparr Statement"), Ex. 9.

Nowhere does the Red or Blue book identify or designate the listed companies as manufacturers. The great majority of the listings consist of local rebottlers who sold locally and regionally in non-Texas limited areas of America and who manufactured nothing. The Red Book and Blue Book are technical catalogues of sellers and not accurate representations of the Texas DES market, nor do they supply any information as to what brand of DES was on the shelves of Madding Dugan Pharmacy in 1970. It is inconceivable that any pharmacist would keep 60 brands of the same generic drug on their shelves.

13. Denied. Dr. Hefferren will testify to the opposite that the tablet Plaintiff identified was uniquely Lilly's. See Hefferren Statement, Ex. 5. Squibbs denies making a cross scored DES tablet. See Squibb's Answer to Interrogs., Ex. 11. Squibb's tablet was 100 mg and the Plaintiff's medical records reflect a 25 mg tablet (Ex. 19B), such as made by Lilly.

14. Admitted.

15. Admitted.

4

16. Denied. Mr. Salinas will testify that the Madding Drug Stores was part of a chain that stocked and dispensed the Lilly brand of DES. He will further testify that if a woman came in with a prescription for DES, she would have received the Lilly product. Mr. Salinas will also testify that he was familiar with other stores and that Madding was part of a chain with uniform ordering practices. See Salinas Statement, Ex. 8.

17. Denied. See 16.

18. Admitted.

**Plaintiffs' Counter Statement of Uncontroverted Material Facts**

19. Dr. Hefferren, Lilly's very own authority on tablet description, as presented in their motion (Defendant's Brief at Ex. 5, Attachment 3), identifies, verifies, and validates that the Lilly product exclusively and uniquely fits the mother's description and identification. See Hefferren Statement, Ex. 5.

20. Plaintiff's unique and distinctive uterine anomaly (a T-shaped uterus) is pathognomonic of DES in utero exposure. See also major OB/GYN texts that denote a "T-shape" uterus as pathognomic to DES, as Ex. 22. Attachments A-G.

21. The Bristol-Myers' Squibb DES pill was called "Stilbetin", not Diesthylbestrol (DES), had the emblem word "Squibb" imprinted on the pill. Ms. Steffen testifies that the DES she took had no imprint. See Steffen Depo., Ex 11, 12, and 20, pages 51. It is disputed by Squibb that their DES pill was even cross-scored. See Photograph of the Bristol-Myers Squibb, 100mg DES pill with the "Squibb" imprint ("Squibb Pill Photo"), Ex. 10 and Squibb's Answers to Interrogs., Ex. 11.

that there were 83 derringers that possessed the same characteristics shown on the bullet and seventy-five of those were manufactured by defendant. The court noted that although plaintiff had not established to a certainty that defendant had manufactured the handgun that caused the injury, they had produced sufficient evidence to raise a jury question. In Liggons, the court commented that "plaintiff produced evidence 'tending to show' that defendants manufactured the gun in question." Id. These authorities put the "blue bus" case cited by the Defendant at page 5 of their memorandum in its proper perspective.

### B.  Plaintiff's Evidence Matches Lilly's DES Exclusively

Plaintiff's mother recalls the pill she ingested: (a) was labeled DES (b) small, (c) round, (d) white, (e) with a cross on it, (f) was given to prevent a miscarriage, and (g) had no other writing or markings on the pill. See Alberta Jean Steffen Deposition ("Steffen Depo."), pgs. 50-51, Ex. 20. Ms. Steffen visually identified and picked out the Lilly DES pill as the one she ingested from photographs of numerous different DES pills. See Steffen Depo., p. 50, Ex. 20; Lilly DES Photo., Ex. 6.

Lilly's 25mg DES pill solely and exclusively fits those exact descriptions. See PDR, Ex. 15. In reality, Lilly's 25mg DES was the only DES product popularly available which was round, white, cross-scored, and without other markings. See Sparr Statement, Ex. 9; Hefferren Statement, Ex. 5; and Cafferty Statement, Ex. 7. No other commonplace DES therapy was available.

### C.  Squibb Is Not An Alternative

Lilly presents a hypothesis but no evidence that Squibb made a cross-score DES pill. Their very source for this statement, Dr. Hefferren disagrees with them. Infra. Most

21

importantly, the Squibb pill is a non-alibi, because the mother's description of an absence of markings other than the cross-score effectively rules out Stilbetin, which was imprinted with the "Squibb" emblem and was not even called Diethylstilbestrol. Squibb's DES was sold under the trade name of "stibetin" not Diethylstilbestrol. ("DES"). See Squibb Pill, Ex. 10 (showing a faint "Squibb" imprint on the pill). Squibb denies that it even made a white, cross-scored markings on it. See Squibb's Answer to Interrogs., Ex. 11. Similarly, the Plaintiff's medical records, Ex. 19B, reveals a 25 mg tablet whereas Squibb's was a 100mg.

### D. The Recent DES Product Identification Decision Sets The Bar For DES Identification Evidence

In Dunseth v. Eli Lilly & Co., 404 F. Supp. 2d 97 (D.D.C. 2005), Defendant Lilly filed a motion for summary judgment on the same DES identification issue. The plaintiff's mother there also recalled the description of the DES pill she took as white and cross-scored. A local Chicago area pharmacist (but not stationed at the relevant store), Eugene Belczak, R.Ph., stated that the DES dispensed in that particular region could only have been Lilly's DES. The Dunseth Court denied Lilly's motion for summary judgment, stating:

> The Court finds that the description of the DES pills ingested by the plaintiff's mother, coupled with the affidavit of Eugene L. Belczak, create "an inference of probability" that the DES in question here was manufactured by the defendant.

Id. at 103.

Like Mr. Belczak's affidavit in Dunseth, Pharmacist Sparr's Statement, Ex. 7, coupled with Plaintiff's mother's definitive description and identification of the Lilly's DES pill, should preclude summary judgment. The plaintiff in Dunseth had less of