IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBIN HOPPER and STEVEN HOPPER,<br><br>    Plaintiffs,<br><br>    v.<br><br>ELI LILLY AND COMPANY,<br><br>    Defendant. | CIVIL ACTION No. 05-CV-02346 (RBW/AK) |

**DEFENDANT ELI LILLY AND COMPANY'S REPLY BRIEF IN SUPPORT OF
MOTIONS TO STRIKE STATEMENTS OF JULIUS PIVER, M.D. AND
<u>JOHN HEFFERREN, Ph.D.</u>**

    Defendant Eli Lilly and Company ("Lilly") has filed a dispositive motion arguing that plaintiffs Robin and Steven Hopper ("plaintiffs") failed to produce any affirmative evidence that prescribing physician George Coleman, M.D. relied on Lilly's product literature in prescribing DES to Ms. Hopper's mother. In support of their opposition to Lilly's Motion, plaintiffs submitted a statement from Julius Piver, M.D. purporting to establish a national standard of care for prescribing DES, as well as a statement from John J. Hefferren, Ph.D. purporting to establish the unique appearance of Lilly's DES pill. Lilly has moved to strike the Piver and Hefferren statements as untimely under Local Rule 26.1, irrelevant and incompetent under Fed. R. Civ. P. 56(e).

    In their Opposition to Lilly's Motions to Strike Testimony of John J. Hefferren, Ph.D. and Julius Piver, M.D. ("Pls. Opp."), plaintiffs argue (1) that Lilly was not prejudiced by the late disclosure of the Piver and Hefferren statements because both witnesses were disclosed in other DES litigation, (2) that the Piver and Hefferren statements became relevant for the first time at summary judgment because Lilly put reliance and product identification "in issue," and (3) that Dr. Piver is competent to establish the standard of care that all OB/GYNs, including Dr.

B3318650.1

Coleman, purportedly followed in the 1970s. In fact, Lilly's prior knowledge of Drs. Piver and Hefferren from other DES litigation did not prevent prejudice *in this case* because Lilly could not depose these witnesses, name rebuttal experts or properly weigh the likelihood of success on summary judgment. Further, Lilly did not put reliance and product identification in issue; these are essential elements of plaintiffs' claims that they have always had the burden of proving under California law. It was plaintiffs' strategic choice to withhold the Piver and Hefferren statements until summary judgment at the risk of having them excluded as untimely. Finally, the purported standard of care for the prescription of DES that Dr. Piver describes is totally irrelevant to this proceeding. California law requires *plaintiffs* to produce affirmative evidence that *Dr. Coleman* specifically relied on Lilly's product literature in prescribing DES to Mrs. Hopper's mother. Dr. Piver has no personal knowledge of Dr. Coleman's prescription practices and thus cannot competently testify as to whether Dr. Coleman followed Dr. Piver's purportedly national standard of care for prescribing DES.

### A.   **Plaintiffs Concede That There was No Substantial Justification for Their Late Disclosures**

Plaintiffs' make no excuses for disclosing the Piver and Hefferren statements for the first time at summary judgment. Instead, they argue that their late disclosure does not prejudice Lilly because Lilly has encountered these witnesses in *other* DES litigation. Pls. Opp., at 1-2. Certainly it is true that Lilly knew who these witnesses were prior to filing its dispositive motion,[1] but Lilly certainly *did not know* that plaintiffs would rely on them *in this litigation*. Following plaintiffs' logic, Lilly should henceforth anticipate in *every* case that *every* expert

---

[1] Plaintiffs' argument that Lilly's prior citation of Dr. Hefferren's 1962 JAMA article somehow mitigates the prejudice caused by late disclosure of his opinion that Lilly's white cross-scored DES pill was unique to Lilly is disingenuous. Knowledge that Dr. Hefferren wrote a neutral article proposing a system for identifying unknown pills in a medical journal in 1962 is altogether different from knowledge that Dr. Hefferren was engaged by plaintiffs in 2006 to conduct a study and render an opinion on the unique appearance of Lilly's DES pill.

plaintiffs' counsel has previously disclosed might be called upon at summary judgment and at trial.

Discovery is not supposed to operate in this manner. Parties are supposed to know the identities of opposing expert witnesses and the substance of their opinions prior to the close of discovery so they can carefully evaluate the experts' data and conclusions, take depositions, decide whether to name rebuttal experts and weigh the chances of success on a motion for summary judgment. Where a party's late disclosure of expert testimony effectively circumvents the discovery process without substantial justification, federal courts properly exclude that testimony. *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757-59 (7th Cir. 2004) (affirming exclusion of expert testimony first disclosed at summary judgment where the experts were previously identified and deposed strictly as fact witnesses because plaintiff's only justification for the late disclosure was a misunderstanding of Fed. R. Civ. P. 26, and because defendant was deprived of the opportunity to question the witnesses as experts, retain rebuttal experts and challenge the expert testimony under Fed. R. Evid. 702); *Lohnes v. Level 3 Communs, Inc.*, 272 F.3d 49, 60 (1st Cir. 2001) (affirming exclusion of expert testimony disclosed at summary judgment where plaintiff provided no explanation for failing to disclose the testimony before the close of discovery and defendant was deprived "of the opportunity to depose the proposed expert, challenge his credentials, solicit experts of its own, or conduct expert-related discovery"); *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008-09 (8th Cir. 1998) (affirming exclusion of expert testimony disclosed at summary judgment where defendant knew of the expert prior to the close of discovery because plaintiff's justification for late disclosure -- to preview the testimony of defendant's expert -- was not substantial, and because defendant was prejudiced by having

drafted a motion for summary judgment based in part on plaintiff's lack of sufficient expert evidence).

What makes plaintiffs' late disclosure in this case so egregious is the ease with which they could have complied with the Court's Scheduling Order and Rule 26(a)(2). Plaintiffs' counsel apparently knew Dr. Piver's credentials and the substance of his report by 2005, *see* Pls. Opp., at 2 (stating that Dr. Piver was disclosed to Lilly in another DES case in 2005); similarly, plaintiffs' counsel apparently knew the substance of Dr. Hefferren's report by November 2006, *see id.* (stating that Dr. Hefferren was disclosed to Lilly in another DES case in November 2006). Assuming this is true, there was absolutely nothing stopping plaintiffs from supplementing their expert disclosures *in this case* at least before the deadline for submitting dispositive motions, and in the case of Dr. Piver, well before the close of discovery. Plaintiffs' choice to wait to disclose Drs. Piver and Hefferren until after Lilly filed its dispositive motion was at best unjustified and at worst a deliberate "sneak attack." *Cf. Lohnes*, 272 F.3d at 60 (calling plaintiff's choice to submit an expert affidavit at summary judgment, more than three months after the close of discovery and three weeks before a final pretrial conference, a "sneak attack").

> **B.    Lilly's Motion for Summary Judgment Did Not Put Product Identification and Reliance in Issue -- These Are Elements of Plaintiffs' Burden of Proof**

Plaintiffs argue that the testimony of Drs. Hefferren and Piver only became relevant when Lilly's Motion for Summary Judgment put product identification and reliance in issue in its dispositive motion. Pls. Opp., at 2-4. Disclosure of the Hefferren and Piver statements prior to the close of discovery was unnecessary, so the argument runs, because Lilly had yet to challenge the sufficiency of plaintiffs' product identification and reliance evidence.

Here again, plaintiffs' argument runs contrary to the basic purposes of discovery and summary judgment. In a civil suit, plaintiffs are charged with amassing sufficient evidence

*during discovery* to prove the essential elements of their claims by a preponderance of the evidence. Where a plaintiff fails to amass sufficient evidence during discovery to prove an essential element of a claim, defendant can move for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986) (stating that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims . . . [T]he burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case"). Plaintiffs cannot wait until a dispositive motion is filed exposing an unsupported element of a claim to disclose stopgap expert testimony; allowing this practice prevents or delays necessary expert discovery and invites dispositive motions that may not have been filed had all relevant evidence been disclosed in a timely manner. *Trost*, 162 F.3d at 1008 (affirming exclusion of plaintiff's expert report disclosed at summary judgment and stating that "[i]t is risky for a plaintiff in a product liability case to sit back and wait . . . before seeking an expert report" given that plaintiffs have the burden "to produce competent evidence within deadlines set by the court or risk sanctions under Rules 16 and 37").

In this case, plaintiffs have the burden under California law of proving at trial that Lilly's DES caused Mrs. Hopper's injuries,[2] and that the prescribing physician's reliance on Lilly's product literature caused him to prescribe DES to Mrs. Hopper's mother.[3] Dr. Hefferren's testimony is relevant to plaintiffs' product identification burden; Dr. Piver's testimony is relevant

---

[2] Plaintiff's product identification burden is discussed more fully in Lilly's Reply Brief in Support of Its Motion for Summary Judgment. *See* Docket No. 43, at 7 (discussing *Rutherford v. Owens-Illinois, Inc.*, 941 P.2d 1203, 1214 (Cal. 1997) which states that "plaintiff[s] must prove that the defective products supplied by the defendant were a substantial factor in bringing about his or her injury").

[3] Plaintiff's reliance burden is discussed more fully in Lilly's Reply Brief in Support of Summary Judgment. *See* Docket No. 43, at 7 (discussing *Motus v. Pfizer, Inc.* 196 F.Supp.2d 984, 995 (C.D. Cal. 2001) and the cases cited therein, which require plaintiffs to establish that the relevant prescribing physician relied on defendant's product literature in choosing to prescribe the product at issue).

to plaintiffs' reliance burden.  As discussed above, plaintiffs knew well in advance of the dispositive motions deadline that they would need to rely on the Hefferren and Piver statements to satisfy their burden of proof.  Lilly did not put product identification and reliance in issue; they have always been essential elements of plaintiffs' claims.  It was plaintiffs' strategic choice to sit back to see whether Lilly could identify any gaps in their evidence on summary judgment rather than disclosing the testimony and/or moving for an extension of discovery.  It was plaintiffs' strategic choice not to expose Drs. Piver and Hefferren to depositions that might identify weaknesses in their opinions.  Plaintiffs' should be sanctioned for these choices because they knew all long they would need Drs. Piver and Hefferren to meet their burden of proof at trial, and because, with earlier disclosure, they could easily have avoided prejudicing Lilly.

      **C.**     **Lilly Need Not Prove That Dr. Coleman Deviated from A National Standard of Care for the Prescription of DES**

Plaintiffs attempt to foist their reliance burden onto Lilly by making the bizarre argument that in order to be successful on summary judgment, Lilly must overcome a presumption under California law that Dr. Coleman followed the applicable standard of care relating to the prescription of DES.  Pls. Opp., at 3-4, 6.  Dr. Piver's testimony, according to plaintiffs, is relevant because it establishes that the *national* standard of care in 1969-'70 was to follow Lilly's product literature when prescribing DES.  *Id.*  To win the day, plaintiffs argue, *Lilly* must come forth with affirmative evidence that Dr. Coleman deviated from that national standard of care when he prescribed DES to Mrs. Hopper's mother.  *Id.* at 4.

Plaintiffs' argument has no basis in California law.[4] The only standard of care for the prescription of DES that is relevant to this case is *Dr. Coleman's*. It is plaintiffs' burden under California law to show that Dr. Coleman relied on Lilly's warnings in prescribing DES to Mrs. Hopper's mother. Plaintiffs can only meet this burden by producing evidence about *Dr. Coleman's* specific prescription practices. *See e.g. Motus v. Pfizer, Inc.* 196 F.Supp.2d 984, 995 (C.D. Cal. 2001) (granting summary judgment because plaintiff could not establish that *Dr. Trostler* relied on defendant's product literature); *Huntman v. Danek Medical, Inc.*, 1998 U.S. Dist. LEXIS 13431, at *19 (S.D. Cal. 1998) (granting summary judgment for medical device manufacturer because plaintiff could not establish that *Dr. Thompson* relied on defendant's alleged misrepresentations); *Plummer*, 819 F.2d at 358-59 (reversing verdict for plaintiff because the evidence showed that *Dr. Cohen* had a practice of failing to convey manufacturer literature to his patients). Dr. Piver's assertions about a *national* standard of care for prescribing DES are completely irrelevant because they contain nothing about Dr. Coleman's prescription practices.

### D. Lilly's Authorities Are on Point in Supporting the Proposition that Dr. Piver's Testimony is Incompetent Under Rule 56(e)

Plaintiffs argument that *Alyeska Pipeline Serv. Co. v. U.S. EPA*, 856 F.2d 309, 314 (D.C. Cir. 1988) and *Judicial Watch v. United States DOC*, 224 F.R.D. 261, 264-65 (D.D.C. 2004) are irrelevant to Lilly's Motions to Strike is demonstrably false. In fact, these cases are directly on point and support the exclusion of those parts of Dr. Piver's statement that lack a foundation in personal knowledge.

---

[4] Plaintiffs cite a medical malpractice case, *Zavala v. Board of Trustees*, 20 Cal.Rptr.2d 768, 773 (Cal. Ct. App. 1993), to support their argument that Lilly has to prove Dr. Coleman's deviation from the standard of care. *Zavala* addresses a plaintiff's burden of proof in medical malpractice cases; it has nothing whatsoever to do with a plaintiff's reliance burden in the context of a product liability suit premised on failure to warn.

While *Alyeska Pipeline* is indeed a FOIA case, the D.C. Circuit stated at the outset of its opinion that "FOIA cases are not immune to summary judgment requirements." *Alyeska Pipeline*, 856 F.2d at 313. In the part of the case cited by Lilly, the Court affirmed the district court's grant of summary judgment to the EPA because the affidavit Alyeska Pipeline relied on to create a material question of disputed fact did not meet the personal knowledge requirement of Rule 56(e):

> Henman's affidavit presented no reliable evidence to support [the] alleged knowledge; in sum, therefore, his assertion that he knows the scope of the investigation is really nothing more than speculation.

*Id.* at 314, n. 45. Similarly, in *Judicial Watch*, another FOIA case, Judge Lamberth struck several portions of an affidavit filed in opposition to a motion for summary judgment because:

> Contrary to Rule 56(e)'s competence requirement, Stewart would not qualify as an affiant who would be competent to testify at trial to the factual basis underlying her assertions given that she has no independent basis of personal knowledge.

*Judicial Watch*, 224 F.R.D. at 264-65.[5] *Alyeska Pipeline* and *Judicial Watch* stand firmly for the proposition that affidavits submitted in opposition to a motion for summary judgment must be based on personal knowledge or be stricken in accordance with Rule 56(e).

Here, plaintiffs concede that Dr. Piver has no personal knowledge of Dr. Coleman's prescription practices, arguing instead that California law presumes that Dr. Coleman followed what Dr. Piver claims was the national standard of care for prescribing DES. Pls. Opp., at 6. As noted above, however, plaintiffs presumption argument is based on California *medical malpractice* law, which has no bearing on this products liability failure to warn case. *See supra* n. 4. It is plaintiffs' burden to produce competent evidence that Dr. Coleman relied on Lilly's

---

[5] *Judicial Watch* is particularly persuasive authority because there, as here, the Court was resolving a motion to strike premised on a violation of Rule 56(e).

product literature when prescribing DES to Mrs. Hopper's mother. Dr. Piver has no personal knowledge that qualifies him to testify about Dr. Coleman's DES prescription practices. Accordingly, the following statements in Dr. Piver's statement -- each of which imply that Dr. Coleman would have followed Lilly's product literature -- should be stricken for lack of foundation in personal knowledge:[6]

- The ***national*** standard of care in 1970 was to prescribe DES in accordance with Lilly labeling which contained neither warning of any injury to the fetus, nor any contraindication in pregnancy. Piver Statement, ¶ 9 (emphasis added).

- Had Lilly contraindicated or warned in their labeling, literature, or a "Dear Doctor" letter of any serious or permanent risks to the daughter in utero, it would have been a departure from the standard of care for ***all*** OB/GYN doctors to ignore such warnings. *Id.* at ¶ 10 (emphasis added).

- It was the customary ordinary and usual practice of ***OB/GYNs in major population centers*** in the U.S. to read, rely upon, and heed Lilly literature, "Dear Doctor" letters, company detail men and PDR entries regarding the specific risks of in utero DES exposure. *Id.* at ¶ 13 (emphasis added).

- Had Eli Lilly issued a similar warning of serious injury to the exposed daughter, it would have been a departure from the standard of care for ***an obstetrician*** to prescribe DES to a pregnant woman. *Id.* at ¶ 14 (emphasis added).

---

[6] In addition, contrary to plaintiffs' assertions, Dr. Piver is not competent to testify that *all* OB/GYNs followed his purported national standard of care. Attendance at several national OB/GYN conferences where the use of estrogen therapies and DES specifically may or may not have been discussed does not qualify Dr. Piver to testify that every single OB/GYN in the United States followed what he perceived to be the standard of care for prescribing DES.

## CONCLUSION

For all the foregoing reasons, Lilly respectfully requests that its Motion to Strike the Testimony of Julius S. Piver, M.D. and its Motion to Strike the Testimony of John J. Hefferren, Ph.D. be GRANTED.

## REQUEST FOR HEARING

Pursuant to LCvR 7.1(f), Lilly requests a hearing on its Motions to Strike.

                    Respectfully submitted,

                    ELI LILLY AND COMPANY

                    /s/ James J. Dillon
                    James J. Dillon
                    D.C. Bar No. 485593
                    Foley Hoag LLP
                    155 Seaport Boulevard
                    World Trade Center West
                    Boston, MA 02210-2600
                    (617) 832-1000

Dated: February 20, 2007